189 N.J. Super. 61 (1983)
458 A.2d 1295
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MOSES WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1982.
Decided March 14, 1983.
*62 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Clair Drugach, Assistant Deputy Public Defender, argued the cause for the appellant (Joseph H. Rodriguez, Public Defender, attorney; Clair Drugach of counsel and on the brief).
Alan A. Sant'Angelo, Deputy Attorney General, argued the cause for the respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Alan A. Sant'Angelo of counsel and on the brief).
The opinion of the court was delivered by TRAUTWEIN, J.A.D.
Defendant was charged in Middlesex County Indictment 469-78 with various crimes, including misconduct in office, in violation of N.J.S.A. 2A:85-1. Thereafter a second indictment, 303-80, charged defendant with aiding and abetting Patricia Clark and Dorian Gilmer to obtain money by false pretenses, in violation of N.J.S.A. 2A:85-14 and N.J.S.A. 2A:111-1. The indictments were consolidated.[1] Defendant was tried to a jury and convicted of misconduct in office and two counts of aiding and abetting the obtaining of money by false pretenses. He was then sentenced to three 90-day concurrent terms in the Middlesex County Adult Correction Center. These sentences were stayed pending appeal.
*63 Defendant's first contention on appeal is that the proofs adduced at trial did not demonstrate that he was a public officer within the meaning of the common law crime of misconduct in office retained by N.J.S.A. 2A:85-1. Therefore, he argues the trial judge erred in denying his motion for judgment of acquittal on that charge. The judge, in denying the motion, stated:
I'm going to deny that motion. I feel that the Defendant was a public officer, for many reasons. He was on the public payroll, he still is, I believe, he vouched to other people he had subordinates on the payroll, he did not have a permanent job, evidently, but I don't think that's definitive at all.
We disagree and conclude that the motion should have been granted.
The following framework of facts emerged from the State's proofs. For some time prior to the events leading up to his indictment, defendant worked for a social service agency known as the God Squad. The purpose of this squad was to aid the impoverished in the New Brunswick-Somerset area and to this end it employed a number of CETA participants. (Comprehensive Employment and Training Act, 29 U.S.C.A. § 801 et seq.). Defendant was the community organizer for the agency, setting up programs and workshops in the community. Defendant was not a paid employee of the God Squad until October 1977 when he became a CETA participant. During the latter part of October 1977 defendant began negotiations with the Middlesex County CETA agency respecting funding of a service agency he had organized under the name of MUST (Minorities United to Save Themselves). The Middlesex County CETA is the agency representing a geographic unit eligible under federal legislation to receive monies for the purpose of providing employment and training to qualified persons. Eventually, defendant negotiated a contract between Middlesex CETA and MUST. Defendant signed this contract as executive director of MUST. Pursuant to this contract, MUST was allocated $160,466 to operate a pilot comprehensive nutrition project for one year, beginning November 3, 1977. MUST was obligated to hire 15 participants, each of whom were to work 40 hours a week. To accomplish the *64 nutritional goals of the project, MUST was to operate according to the following guidelines:
Victory Garden
 project staff will instruct residents in how to utilize available land to reduce the cost of food, and supply themselves with fresh fruits and vegetables from backyard gardens;
 staff will train residents in the techniques of agriculture;
 staff will assist community residents in obtaining municipal and county assistance in the form of space in which to establish community gardens.
 staff will provide training to residents in canning and preserving fruits and vegetables.
Meat for the People
 staff will instruct residents in basic butchering skills and provide an insight into butchering as an occupation;
 workshops will be held on the price of meat,
 staff will provide educational programs on meat preparation; nutrition and meat quality;
 project staff will encourage and attempt to organize community groups to purchase large quantities of meat (e.g. whole cow) which could be butchered by themselves at substantial savings.
 nutrition education
The 15 full-time employees which defendant, as executive director of MUST, was to hire were required by law to be qualified as certified CETA participants, and once hired had to work 40 hours a week. The proofs at the trial clearly demonstrated that defendant hired noncertified individuals who were allowed to work less than 40 hours a week. This breach of MUST's contract with CETA was accomplished by defendant, who forwarded false time sheets to CETA. These part-time employees would divide the paycheck which was issued in the name of one of them. Defendant also permitted some MUST employees to work fewer hours than the time for which they were paid. Employees testified that the atmosphere at MUST was "lax," with little supervision over the time sheets or the comings and goings of employees.
At oral argument we requested additional information as to the organizational and operational characteristics of MUST, and were furnished with a copy of MUST's articles of incorporation. *65 These articles demonstrate that MUST was organized as a nonprofit corporation pursuant to Title 15 of the Revised Statutes of 1937. These articles provided in pertinent part:
Second. The purpose of the Minorities United to Save Themselves is to serve as forum in which the minority community can find vehicles for social expression. Through the existing social structure, they can further develop the means and strategies for survival within the restraints and contexts of its relationship to the majority community.
........
Fourth. It is the intent and purpose of this corporation to be organized and operated exclusively for charitable or educational purposes in [sic] no part of the net earnings or principle shall inure to the benefit of any private share holder or individual in no [sic] substantial part of the activities of this corporation or any recipients of its fund shall be to carry on propaganda or otherwise to attempt to influence legislation.
In effect, what defendant did was to organize MUST as a nonprofit corporation and thereafter to contract with CETA to fund MUST's operations. Despite the fact that part of the CETA funds received by MUST were used to finance defendant's salary, we are hard pressed to characterize defendant's role in MUST as that of a public official. In the real world comprised of a myriad number of independent agencies which operate in whole or in part from funds channeled down through a complex system of funding by federal and state governments, who ultimately employ these funds to attain socially beneficial objectives as MUST does, we cannot conceive that the mere receipt of public funds, so channeled, makes the operative head of such an agency a public officer.
As a starting point, we are aware of the expansive definition of a public officer rendered in State v. Begyn, 34 N.J. 35 (1961). There the defendant, a sanitary inspector in a municipal health department, challenged his conviction for misconduct in office by asserting that the proofs failed to establish that he acted in an official capacity. The court rejected this argument, stating:
The scope of the term should be governed by the nature of the particular problem. Reilly v. Ozzard, 33 N.J. 529 (1960). The underlying basis of the various crimes of official misconduct is the breach of a duty of public concern by one who by virtue of his position  whatever it might be called  is in some way *66 entrusted with the public welfare. So the definition of "officer" with respect to any such crime must be so broad that no public employee can claim to be outside its circumscription so long as the alleged misconduct is at all related to his official duties and obligations, express or inherent. Cf. State v. Goodman, 9 N.J. 569, 583-584 (1952). [at 43]
We incline, however, toward the principle expressed in Fredericks v. Board of Health, 82 N.J.L. 200, 201 (Sup.Ct. 1912), cited with approval in State v. Goodman, 9 N.J. 569, 583 (1952), that "An office is a place in a governmental system created or recognized by the law of the state which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties."[2] We find that the position of executive director of a nonprofit private corporation such as MUST is not a place in our governmental system to which the continuous performance of permanent public duties has been assigned.
Moreover, when exploring the question of whether defendant's position as MUST's executive director amounted to a public office, we deem the contractual nature of the relationship between MUST and CETA to be significant.
A government office, it has been declared is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its object. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other. Therefore, an agreement, authorized by law, between the government and third parties expressly stipulating and describing the duties and fixing the compensation, does not create an office. [3 McQuillin, Municipal Corporations (3 ed. 1982), § 12.30 at 154.]
And see State v. Indelicato, 87 N.J. Super. 566 (Law Div. 1965).
We conclude, therefore, that defendant did not fill a public office within the intendment of N.J.S.A. 2A:85-1, where he simply supervised the expenditure of CETA grant monies under a contractual arrangement between his employer (MUST) and CETA.
*67 Accordingly, we reverse defendant's conviction for misconduct in public office.

[The court finds without merit defendant's contentions challenging his convictions for aiding and abetting the obtaining of money by false pretenses.]
For the reasons aforesaid we affirm defendant's convictions for aiding and abetting the obtaining of money by false pretenses and remand for sentencing.
NOTES
[1] The State agreed to dismiss all counts of Indictment 469-78 save count IX charging misconduct in office.
[2] N.J.S.A. 2C:30-2, in defining official misconduct of a public servant, does not assist us in determining whether defendant held a public office under N.J.S.A. 2A:85-1.