253 N.J. Super. 253 (1992)
601 A.2d 743
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
FRANK MOSCATO, CITY CONSTRUCTION DEVELOPMENT CORPORATION, JOHN CHIAMBRONE, SPRINGBROOK ACRES, INC., AND SLASH CONSTRUCTION COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1991.
Decided January 21, 1992.
*255 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Victoria Curtis Bramson, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney; Victoria Curtis Bramson, on the brief).
Michael Critchley argued the cause for respondents (Michael Critchley, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The State appeals from an order dismissing State Grand Jury Indictment No. 267-90-2. It charged that between December 26, 1989 and February 10, 1990, defendants "did commence or continue operation of a sanitary landfill facility ... without having a tariff therefor filed with and approved by the Board of Public Utilities ... contrary to the provisions of N.J.S.A. 48:13A-6.1...."
For the purposes of this appeal, we shall accept the State's version of the facts. During the period in question, defendant City Construction Development Corporation (City) was performing a contract to demolish a two-story wood frame building in Jersey City. Defendant Frank Moscato is City's president and defendant John Chiambrone was employed by City as a foreman. Moscato's daughter was president of Slash Construction Company which was listed as the demolition contractor on Jersey City's demolition permit. Defendants trucked the demolition debris to a large tract of land in Bloomingdale, New *256 Jersey, owned by defendant Moscato and known as Springbrook Acres, where defendants buried the debris.
As previously indicated, the indictment alleged that defendants violated N.J.S.A. 48:13A-6.1 (hereafter referred to as § 6.1). That statute provides:
Notwithstanding the provision of any other law, rule or regulation to the contrary, no sanitary landfill facility shall commence or continue operation unless a tariff therefor has been filed and approved by the Board of Public Utilities pursuant to the "Solid Waste Utility Control Act of 1970" (P.L. 1970, c. 40, C.48:13A-1 et seq.). No sanitary landfill facility shall operate under any conditions contrary to those specifically set forth in its approved tariff.
This act shall not apply to sanitary landfill facilities operated by an authority created under P.L. 1946, c. 138 (C. 40:14A-1 et seq.) or P.L. 1957, c. 183 (C. 40:40-14B-1 et seq.).
N.J.S.A. 48:13A-12 renders violation of § 6.1 a misdemeanor with punishment by up to three years imprisonment or a fine of not more than $50,000 or both. A corporate defendant is subject to a fine of up to $100,000.
Defendants moved to dismiss the indictment on the ground that it was void for vagueness, "duplicitous and improperly pled" and was the result of prosecutorial misconduct. Judge Conn rejected those contentions in a letter opinion dated May 15, 1991. However, he raised the issue, sua sponte, of § 6.1's applicability to defendants' conduct and ordered the parties to brief it. Thereafter, in a written letter opinion dated June 10, 1991, he ruled that § 6.1 does not apply to the disposal of solid waste on the disposer's property, an act the court characterized as "illegal dumping."
Section 6.1 was added to the Solid Waste Utility Control Act (hereafter the Utility Act), N.J.S.A. 48:13A-1 et seq., in 1981 by L. 1981, c. 221, § 1. The Utility Act was adopted in 1970, L. 1970, c. 40, and should be read in conjunction with the Solid Waste Management Act (hereafter the Management Act) adopted the same year. L. 1970, c. 39; N.J.S.A. 13:1E-1 et seq. Although the Acts are complementary, they fulfill different public needs.
*257 The Management Act establishes "a statutory framework within which all solid waste collection, disposal and utilization activity in this State may be coordinated." N.J.S.A. 13:1E-2(b)(1). Coordination is to be accomplished through the development and implementation of "a comprehensive solid waste management plan which meets the needs of every municipality within each ... county and within the Hackensack Meadowlands District." N.J.S.A. 13:1E-2(b)(2). To that end, each county is designated as a "Solid Waste Management District," as is the Hackensack Meadowlands District. Id.; N.J.S.A. 13:1E-19. Each district is required to formulate a solid waste management plan, N.J.S.A. 13:1E-20 and 21, subject to the review and approval of the Department of Environmental Protection (DEP), N.J.S.A. 13:1E-24.
The Management Act empowers the DEP "to supervise solid waste collection and disposal facilities or operations." N.J.S.A. 13:1E-4. This is accomplished in part through the requirement that new and existing solid waste collection and disposal facilities register with the DEP. N.J.S.A. 13:1E-4. N.J.S.A. 13:1E-5 involves the DEP in the details of solid waste collection and disposal. It provides in part:
a. Unless exempted by the department, no person shall hereafter engage or continue to engage in the collection or disposal of solid waste in this State without first filing a registration statement and obtaining approval thereof from the department. A person engaging in solid waste disposal shall file a separate registration statement with an engineering design for each disposal facility which he operates. The registration statement and engineering design for each disposal facility and approval of same shall be for the duration of the plan.
....
c. No registration shall be approved by the department when in the opinion of the department such solid waste collection or disposal facility or operation will not meet the standards or criteria set forth in this amendatory and supplementary act or in regulations as may be promulgated under authority of this act or this amendatory and supplementary act.
See also N.J.S.A. 13:1E-26.
A solid waste facility "constructed, acquired or operated" pursuant to the provisions of the Management Act "shall be *258 deemed a public utility" subject to "the Board of Public Utility Commission in accordance with the provisions of the `Solid Waste Utility Control Act of 1970.'" N.J.S.A. 13:1E-27.
The Utility Act's focus, on the other hand, is on the cost and level of service. N.J.S.A. 48:13A-2 defines the Utility Act's objectives:
The Legislature finds and declares that the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of people of this State require efficient and reasonable solid waste collection, disposal and utilization service; that such service will more likely be achieved if the Public Utility Commission is charged with the duty of setting and enforcing standards and rates for regulating economic aspects of solid waste collection, disposal and utilization service; and that the exercise of any power herewith provided for shall be deemed to be in the public interest and for a public purpose. [Emphasis added.]
Thus, N.J.S.A. 48:13A-4 requires the Board of Public Utility Commissioners (BPU) to "make appropriate rules, regulations and administrative orders for the regulation of rates and public utility aspects of the solid waste collection industry and the solid waste disposal industry." (Emphasis added.) N.J.S.A. 48:13A-5 authorizes the BPU to award franchises to persons engaged in solid waste disposal "at rates and charges published in tariffs or contracts accepted ... for filing by the board," provided that the franchise conforms to the waste management plan approved by the DEP.
Similarly, N.J.S.A. 48:13A-7 authorizes the BPU to review waste collection or disposal rates to determine whether they "exceed just and reasonable rates or charges for such service" and if so, to make an appropriate adjustment. N.J.S.A. 48:13A-8 requires "every person engaged in the business of solid waste collection or solid waste disposal" to furnish a performance bond as may be required by the BPU, and N.J.S.A. 48:13A-10 prohibits monopolies or attempts to monopolize "the solid waste collection business or the solid waste disposal business."
The DEP, through the Management Act, and the BPU, through the Utility Act, exercise concurrent jurisdiction over solid waste collection and disposal. The linkage, as we have *259 seen, is established in N.J.S.A. 13:1E-27 which deems solid waste facilities established pursuant to the Management Act to be public utilities subject to the BPU. The Utility Act completes the connection through N.J.S.A. 48:13A-6a which provides:
a. No person shall engage, or be permitted to engage, in the business of solid waste collection or solid waste disposal until found by the board to be qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of public convenience and necessity issued by the Board of Public Utilities. No certificate shall be issued for solid waste collection or solid waste disposal until the proposed collection or disposal system has been registered with and approved by the State Department of Environmental Protection as provided by section 5 of P.L. 1970, c. 39 (C.13.1E-5). [Emphasis added.]
The Acts, therefore, contemplate DEP approval of a solid waste facility before the facility's operator may engage in the business of solid waste collection or disposal, followed by the BPU's issuance of a certificate of public convenience and necessity.
Section 6.1, which the indictment charges defendants with violating, is part of the process through which an operator of a "sanitary landfill facility" prepares to serve the public. It requires the operator to file a tariff with the BPU and to receive BPU approval of the tariff before commencing operations. "A tariff is a published schedule of rates, filed by a public utility, and thereafter, in the absence of a successful challenge, applicable equally to all customers." In re Application of Saddle River, 71 N.J. 14, 29, 362 A.2d 552 (1976). See N.J. Bell Tel. Co. v. West Orange, 188 N.J. Super. 455, 459, 457 A.2d 1196 (App.Div. 1982), certif. denied, 93 N.J. 283, 460 A.2d 682 (1983).
Under this statutory scheme, the Utility Act requires a certificate of public convenience and the filing of a tariff only if a person intends to provide solid waste collection or disposal services to the public by engaging in the "business" of collection and disposal. The Management Act, on the other hand, regulates solid waste collection and disposal whether or not those services are being provided to the public. See Johnson Machinery v. Manville Sales, 248 N.J. Super. 285, 590 A.2d *260 1206 (App.Div. 1991), which held that the Management Act applies to sole source sanitary landfills that receive only the waste generated by their operators' industrial processes.
A court should not dismiss an indictment except on the clearest and plainest grounds and only where evidence to support it is clearly lacking. State v. Vasky, 218 N.J. Super. 487, 490-91, 528 A.2d 61 (App.Div. 1987); State v. Ferrante, 111 N.J. Super. 299, 304, 268 A.2d 301 (App.Div. 1970). We cannot rule on the limited record presented to us that defendants were not in the business of collecting and disposing of solid waste. To the contrary, the record suggests that they were in the business of demolition which included the collection, removal and disposal of demolition debris. Whether the disposal of demolition debris by the demolition company on its own property requires a certificate of public necessity and the filing of a tariff is neither clear nor plain.[1] Consequently, the indictment should not have been dismissed on the ground that defendants were disposing of waste on their own property.
We affirm the order of dismissal, however, on a related but slightly different ground. Section 6.1 requires a filed and approved tariff before a person may operate a "sanitary landfill facility." The narrow issue, therefore, is whether defendants were operating a "sanitary landfill facility" at Springbrook Acres. The Utility Act does not define "sanitary landfill facility," though a 1987 amendment to the Management Act defined it for the purpose of that act. L. 1987, c. 449, § 1; N.J.S.A. 13:1E-3q. However, BPU regulations, specifically the subchapter governing tariffs, define sanitary landfill in the section titled "Solid Waste Uniform Tariff." N.J.A.C. 14:11-7.6 provides:
"Sanitary landfill" means a permitted solid waste facility, at which solid waste is deposited on or into the land or fill for the purpose of permanent disposal or *261 storage for a period of time exceeding six months, except that it shall not include any waste facility approved for disposal of hazardous waste. N.J.S.A. 13:1E-3.[2] [Emphasis Added.]
The BPU's definition of "sanitary landfill" replicates the Management Act's definition contained in N.J.S.A. 13:1E-3q, with one exception. The BPU added the adjective "permitted" to modify the phrase "solid waste facility." The use of "permitted" as a modifier is consistent with the relationship between the Management Act and the Utility Act and the requirement that only a solid waste facility which has received DEP approval under the Management Act may be awarded a certificate of public convenience. N.J.S.A. 48:13A-6a. We conclude, therefore, that only a "permitted" facility, i.e., one that has been approved by the DEP under N.J.S.A. 13:1E-5, is required to file a tariff. Springbrook Acres was not a "permitted" sanitary landfill and, therefore, § 6.1 was not applicable.
We recognize the resulting anomaly. A person who operates a non-approved landfill, thereby violating the Management Act, does not violate § 6.1 of the Utility Act, but a disposer who operates a DEP-approved landfill does violate § 6.1 if he has not filed an approved tariff. Because a violation of § 6.1 is an indictable offense, N.J.S.A. 48:13A-12a, an unlawful disposer of non-hazardous waste arguably is better off violating the Management Act by not getting DEP approval since that violation constitutes only a disorderly persons offense. N.J.S.A. 13:1E-9.4a.[3] The anomaly, however, results from the Legislature's decision to punish more severely persons who violate the Utility Act in certain circumstances, and it is up to the Legislature to cure that anomaly if it believes a cure to be appropriate.
We are mindful that statutes defining criminal conduct must be strictly construed. State v. Valentin, 105 N.J. 14, 17, *262 519 A.2d 322 (1987). Additionally, "[p]enal statutes must be sufficiently definite so that ordinary people can understand what conduct is prohibited." Id. at 18, 519 A.2d 322. By not providing fair warning, a vague law may trap the innocent and may lead to arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972).
In the present case, § 6.1, when read in context with the section requiring a certificate of public convenience, with other sections of the Utility Act and with the division of responsibility between the DEP and BPU, suggests but does not clearly state that only persons who have received DEP approval are required to file a tariff. Indeed, N.J.S.A. 13:1E-27 provides that only solid waste facilities "constructed, acquired or operated pursuant to the provisions" of the Management Act "shall be deemed a public utility and shall be subject to ... the [BPU] in accordance with the provisions of the Solid waste Utility Control Act of 1970." The suggestion inherent in § 6.1's context was made manifest by the BPU when it defined a "sanitary landfill" as a "permitted" waste facility, thereby eliminating a contextual ambiguity and vulnerability to a charge of unconstitutional vagueness. Defendants did not operate a "permitted" sanitary landfill and, therefore, they were not required to file a tariff with the BPU.
Affirmed.
NOTES
[1] This opinion should not be construed as expressing a view, one way or the other, regarding this issue.
[2] This citation to the Management Act is part of the definition.
[3] Unlawful disposition of hazardous waste in violation of the Management Act is an indictable offense. N.J.S.A. 13:1E-9.g and h.