275 N.J. Super. 648 (1994)
646 A.2d 1159
STATE OF NEW JERSEY, PLAINTIFF,
v.
FRED L. VICKERY, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided January 7, 1994.
*650 Robert H. Corbin, First Assistant, Middlesex County Prosecutor, for plaintiff.
Norman M. Hobbie, and Brian D. Gillet, for defendant.
HOFFMAN, J.S.C.
This case presents the novel question of whether a member of the Society for the Prevention of Cruelty to Animals (S.P.C.A. or Society) is a "public servant" for the purposes of the Official Misconduct statute, N.J.S.A. 2C:30-2. The issue is one of first impression in this state, and research has not revealed a case on point in any other jurisdiction.
The facts as alleged in the grand jury presentation are uncomplicated. The defendant, Fred Vickery, served as a captain in the Edison Township Fire Department, and as a member of the S.P.C.A. Together with another individual, defendant owned and managed a discount retail store known as "Groceries for Less." In 1991, defendant approached personnel at an A & P warehouse and identified himself as a captain in the Edison Fire Department and a member of the S.P.C.A. He solicited donations of salvaged pet food for the "Edison Humane Society," a fictitious organization. Testimony indicated that the A & P personnel would not have donated the merchandise had defendant not been an S.P.C.A. member.
The state contends that the items received by the defendant did not go for any legitimate S.P.C.A. purpose, but rather were offered for sale at Groceries for Less. Defendant has been charged with theft by deception and official misconduct. He *651 moves to dismiss the charge of official misconduct on the ground that he is not a public servant, and thus does not fall within the purview of the official misconduct statute.
N.J.S.A. 2C:30-2 provides that:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner.
The crime of official misconduct has three elements: 1) that the defendant was a public servant at the time alleged in the indictment; 2) that he committed an act relating to his office knowing that it was unauthorized; and 3) that the defendant's purpose was to benefit himself or another.
N.J.S.A. 2C:27-1(g) defines a public servant as "any officer or employee of government, ... and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." This is a very broad definition, and for the reasons stated below, I find that it would include S.P.C.A. members under the circumstances sub judice.
The apparent purpose of the misconduct statute is to prevent the abuse of government power for personal benefit. A relevant question for the resolution of this issue then, is whether S.P.C.A. members occupy positions carrying governmental authority, and whether the opportunity exists for abuse of that authority.
Unlike most charitable organizations, the role of the S.P.C.A. is formally acknowledged and established by statute.[1]N.J.S.A. 4:22-1 authorizes the incorporation of the S.P.C.A. and empowers it to enforce all laws enacted "for the protection of dumb animals." N.J.S.A. 4:22-4 provides for assistance to the S.P.C.A. by other *652 government agencies, such as police forces, in carrying out these duties. Examination of some of the specific powers granted to the S.P.C.A. makes clear that it performs a government function.
In the course of their duty to enforce the law, S.P.C.A. members may make arrests and apply for warrants. N.J.S.A. 4:22-44(a) authorizes members of the S.P.C.A. to make arrests for violations of the laws protecting animals. Subsection (b) provides that if a violation of the law occurs in the presence of an S.P.C.A. member, he or she may make an arrest without a warrant, and bring the perpetrator before the nearest judge or magistrate. While subsection (a) does not say so explicitly, the clear inference is that it refers to arrests made pursuant to a warrant. N.J.S.A. 4:22-50.1 reenforces this presumption. It provides for appointing a receiver for animal shelters when their owners or operators are arrested for violations of the law by an agent of the S.P.C.A., "or when the warrant is issued for the arrest."[2]
In addition, under N.J.S.A. 4:22-47, S.P.C.A. members may enter buildings where fighting or baiting of live animals is taking place. They may arrest without warrant all persons present, take possession of all animals being used, and apply to a court for their forfeiture.[3] The persons authorized to act under N.J.S.A. 4:22-47 are "sheriff[s], undersheriff[s], constable[s], police officer[s], or agent[s] of the New Jersey Society for the Prevention of Cruelty *653 to Animals."[4]
N.J.S.A. 2C:39-6 grants another privilege to S.P.C.A. members which private citizens do not enjoy. Subsection (c) permits officers of the S.P.C.A. to carry weapons in the actual performance of their official duties. The same subsection also authorizes weapons for special agents of the Division of Taxation, Division of Parks and Forestry officers, court attendants appointed by a sheriff or judge, railway police, transit police officers, campus police officers (who have the same authority as other police officers in the state, pursuant to N.J.S.A. 18A:6-4.5), railway express company and bank guards, members of legally recognized military organizations, and security guards for nuclear power plants. All of the members of this group, which the commentary terms "law enforcement and quasi-law enforcement officials," perform some function for public safety or administration.
N.J.S.A. 4:22-3(f) authorizes the Society to adopt a common badge, to be the authority for making arrests. N.J.S.A. 4:22-12 makes use of the S.P.C.A. badge by a non-member a misdemeanor. An exclusive badge of authority is the mark of a public servant.
Private citizens may not seek an arrest warrant from a judge or magistrate on their own. They also may not freely carry weapons or wear badges. Were a private citizen to engage in the entry, arrest or seizure activities permitted to S.P.C.A. members, it would constitute trespass, theft and possibly kidnapping. That the statutes grant this authority to S.P.C.A. members together with police and other law enforcement personnel demonstrates their status as public servants.
Defendant contends that he is not a public servant because no statute provides for grant of funds by the government to the *654 S.P.C.A. While this argument has some merit, it is by no means dispositive of the issue. The statutory definition of public servant makes no mention of payment. In fact, it expressly does not limit itself to employees, but rather includes any person participating in performing a government function, even in the role of advisor or consultant.[5]
In State v. Williams, 189 N.J. Super. 61, 458 A.2d 1295 (1983), the Appellate Division addressed the issue of receipt of government funds in the context of the misconduct in office statutes, N.J.S.A. 2A:135-1 to 135-13. Williams is of limited precedential value because it dealt with N.J.S.A. 2A:135, since repealed, and because the Appellate Division expressly noted that N.J.S.A 2C:30-2 regarding public servants did not affect its analysis of whether the defendant held a public office. Nonetheless, the court's reasoning is instructive. In Williams, the defendant served as the executive director of a charitable organization meant to provide education and social services to the minority community. He obtained a government grant to fund a pilot program through his organization. Williams was later charged with misuse of those funds, and convicted of aiding and abetting theft by deception and of misconduct in office. He appealed, contending that he was not a public officer for the purposes of the statute.
The Appellate Division reversed the conviction, holding that despite the fact that William's salary came from the government grant money, he was not a public officer. The circumstances in Williams constitute the reverse of the instant case. The defendant's agency did receive government funds, but rather than *655 serving a governmental function, it performed independent charitable work. "In the real world comprised of a myriad number of independent agencies which operate in whole or in part from funds channeled down through a complex system of funding by federal and state governments ... we cannot conceive that the mere receipt of public funds, so channeled, makes the operative head of such an agency a public officer." Id. at 65, 458 A.2d 1295. Thus, the function and authority of the organization is the determinative factor, and not the use of government money. A similar analysis in this case leads to the conclusion that defendant is a public servant.
Defendant also contends that because of the limited area in which S.P.C.A. members may exercise their powers, and the limited nature of those powers, they do not constitute public servants. However, the definition of public servant would apply any time that an individual exercises governmental authority. "The language of N.J.S.A. 2C:30-2 evinces a clear legislative intent to make the crime of official misconduct applicable in situations where the actor undertakes or assumes to perform certain public duties by virtue of his or her office and as if incident to the office." State v. Maioranna, 225 N.J. Super. 365, 371, 542 A.2d 510 (Law Div. 1988), aff'd, 240 N.J. Super. 352, 573 A.2d 475 (App.Div. 1990). Thus, while the scope of the S.P.C.A.'s power is limited, when members operate within that scope to perform a government function, they act as public servants.
Finally, the defendant contends that application of the official misconduct statute to S.P.C.A. members would chill volunteer spirit within communities. This argument is not persuasive. The official misconduct statute merely increases the possible penalties on volunteers who make improper use of the power of their offices. Since all citizens are expected to obey the law, the possibility of official misconduct charges should not have any inappropriate deterrent effect on volunteer activities.
In sum, S.P.C.A. members have the power to investigate reports of cruelty to animals, to make arrests and seizures, and to sue for *656 and collect fines. The purpose of each of these powers is to perform a government function. The opportunity that these powers present for extortion or other abuses is obvious. Therefore, I conclude that members should be deemed public servants within the purview of the official misconduct provisions of N.J.S.A. 2C:30-2.
The defendant's motion to dismiss the charge of official misconduct is denied.
NOTES
[1] Research has unearthed no comparable statutory provisions for such organizations as the American Red Cross, the American Cancer Society, the United Way, or the Boy Scouts.
[2] A common law tradition exists for private citizens to make arrests for crimes committed in their presence. However, this is distinct from the statutory directive to S.P.C.A. members to actively enforce the laws and to make arrests in the course of their duties. The difference is highlighted further by the execution of arrest warrants by private citizens. Under N.J.S.A. 2A:161-1, a judge may, in writing by his hand and seal, appoint a private citizen if an immediate arrest is necessary to public justice, and no authorized person is available. S.P.C.A. members are authorized to make arrests by statute, with no requirement of special procedures or exigency.
[3] S.P.C.A. members may also seize vehicles used to transport animals in a cruel manner. After ten days they may sell the vehicles and use the proceeds to cover the expenses of seizure and storage. N.J.S.A. 4:22-52.
[4] While this provision refers to "agents" rather than "members," N.J.S.A. 4:22-43 provides that any member of the S.P.C.A. may perform and exercise powers and duties like those of agents of the Society specially deputized by a sheriff.
[5] In a supplementary memorandum, the defendant described state involvement with and support for volunteer firemen and volunteer rescue and ambulance squads. Benefits include eligibility for insurance coverage or subsidies by a municipality, special workers' compensation consideration, and eligibility for special loans to preserve or maintain property. I do not believe that these provisions shed any further light on the issues. The defense makes no showing as to whether these organizations constitute public servants, and the benefits bestowed generally resemble the issue of government funding and salaries, which is not dispositive.