778 A.2d 1119 (2001)
343 N.J. Super. 410
STATE of New Jersey, Plaintiff-Respondent,
v.
Vivian DeCREE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 14, 2001.
Decided August 2, 2001.
*1120 Carl H. Hadigian, Newark, attorney for appellant.
John J. Farmer, Jr., Attorney General of New Jersey, attorney for respondent (Lisa Sarnoff Gochman, Deputy Attorney General, of counsel and on the brief).
Before Judges HAVEY, WEFING and CUFF.
The opinion of the court was delivered by CUFF, J.A.D.
Following a jury trial, defendant was found guilty of two counts of conspiracy (second degree) contrary to N.J.S.A. 2C:5-2, theft by deception (third degree) contrary to N.J.S.A. 2C:20-4, and official misconduct (second degree) contrary to N.J.S.A. 2C:30-2. Defendant was sentenced to concurrent terms of five years on each of the conspiracy convictions and the official misconduct conviction, and a concurrent three-year term on the theft by deception conviction. In addition, a $200 VCCB assessment, a $300 SNSF assessment, a fine of $3000 and restitution in the amount of $1900 were also imposed.
On appeal, defendant raises the following arguments:
POINT I THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH MS. DECREE'S GUILT OF SECOND-DEGREE CONSPIRACY TO COMMIT THEFT IN EXCESS OF $75,000.
POINT II THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH MS. DECREE'S GUILT OF SECOND-DEGREE CONSPIRACY TO COMMIT OFFICIAL MISCONDUCT AND SECOND-DEGREE OFFICIAL MISCONDUCT.
The convictions stem from a fraud scheme involving a Bergen County psychiatrist and a multitude of employees of the Newark Board of Education. The State alleged that between August 7, 1989 and November 3, 1994, Carl H. Lichtman, a psychiatrist with offices in Ridgewood, submitted claims for psychotherapy services rendered to employees of the Newark Board of Education. According to the State, all of the claims were false because no services were provided.
The testimony at trial revealed that Lichtman obtained the name, social security number and other pertinent information of different people covered by the State Health Benefits Program. Lichtman would submit a claim under an individual's name. When he received payment, the employee received 25% of the payment. School board employees who steered other employees to Lichtman received a $750 referral fee. Over the course of the conspiracy, Lichtman received over $2,000,000 from the State Health Benefits Program.
Defendant became implicated in the waning days of the conspiracy. In March 1994, defendant was a security officer at Camden Middle School. One afternoon in early March 1994, Bertha Johnson, a custodial worker at Camden Middle School, approached defendant and asked if she had *1121 "heard about this doctor giving some money." Defendant replied that she had not heard of him. Soon thereafter, Johnson's mother, Shirley Burns, arrived at the school and Johnson introduced defendant to her mother. Burns was a runner for Lichtman. According to Burns, defendant and she spoke for a few minutes. At the end of the conversation, Burns gave Lichtman's phone number to defendant.
In a statement given on August 30, 1995, defendant stated that Lichtman contacted her at home about one week after her conversation with Johnson and Burns. Lichtman asked her to verify her social security number and mailing address. He informed her she could expect to receive "at least $2,000." On March 28, 1994, Lichtman submitted false claims to the benefits program for services purportedly supplied to defendant. Several weeks later, Lichtman received payment for the claims and remitted $1,900 to defendant and $750 to Burns.
Defendant was indicted on four charges: second degree conspiracy to commit the crime of theft by deception in excess of $75,000 (Count One), second degree conspiracy to commit the crime of official misconduct (Count Two), third degree theft by deception (Count Six), and second degree official misconduct (Count Seven). The overt acts in support of the conspiracy to commit theft by deception were the submission of false claims on behalf of Lauren Abdussabur, Deborah Taft and her dependents, and defendant. The State Health Benefits Program paid $125,309.50 to Lichtman for these false claims. Lichtman received $7,600 for the false claims submitted in defendant's name. The overt acts in support of the second degree conspiracy to commit official misconduct charge were the receipt of payments for the claims submitted utilizing Taft and defendant's names.
In this appeal, we must determine whether the State's proofs support a conviction for second degree conspiracy to commit theft by deception in excess of $75,000. We must also determine whether defendant's criminal conduct constitutes official misconduct.

I
The State charged defendant with second degree conspiracy to commit theft by deception in excess of $75,000. According to the State, it alleged and established that defendant, along with Lauren Abdussabur, Deborah Taft, Miles Callendar, and Theresa Flagg aided in Dr. Lichtman's scheme to defraud the State Health Benefits Program. Defendant and the other co-conspirators are linked to Lichtman by the same "runner," Shirley Burns. Defendant argues that the evidence established no more than multiple, distinct conspiracies.
N.J.S.A. 2C:5-2a provides:
A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
N.J.S.A. 2C:5-2b governs the scope of the conspiracy. It provides:
If a person guilty of conspiracy ... knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, *1122 whether or not he knows their identity, to commit such crime.
One commentator has stated that this subsection "requires that if a person is to be held a conspirator of another he need not have conspired with him directly or know who he is, but he must know that the person with whom he is conspiring has brought in others." Cannel, New Jersey Criminal Code Annotated, comment 7 on N.J.S.A. 2C:5-2 (2001-2002); Accord New Jersey Penal Code, Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission, comment 13 on N.J.S.A. 2C:5-2 (1971). This approach is said to be in accord with Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). See also State v. Roldan, 314 N.J.Super. 173, 181-82, 714 A.2d 351 (App.Div.1998) (State need not prove a direct connection between all conspirators but must prove that other participants are aware that success of venture hinges on actions of others).
In Blumenthal, the Court considered a conspiracy to sell 4,000 cases of whiskey at prices above the ceiling set by regulations of the Office of Price Administration, in violation of the Emergency Price Control Act. Several salesmen participated to accomplish this purpose. The indictment charged a single conspiracy in a single count. The Court found that the acts of the salesmen "were merely steps in the formation of the larger and ultimate more general conspiracy." Blumenthal, supra, 332 U.S. at 557, 68 S.Ct. at 257, 92 L.Ed. at 168. The scope of the scheme and the salesmen's knowledge of its scope and the need for the involvement of others besides themselves to accomplish the scheme rendered their ignorance of the identity of others in the scheme, including the owner of the whiskey, meaningless in terms of confining their liability. Id. at 557-58, 68 S.Ct. at 256-257, 92 L.Ed. at 168-69.
In contrast, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), illustrates a situation in which the nature of the fraud renders lack of knowledge of other participants legally significant. In Kotteakos, a single loan broker, a man named Simon Brown, attempted through fraudulent representations to obtain separate loans for thirty-two separate individuals. The common connection among the thirty-two individuals was that each had dealt with Brown. Some of the individuals had referred some of the other individuals to Brown. Everyone knew Brown was a broker who was willing to obtain fraudulent loans. The question was whether the evidence showed one vast conspiracy comprising of Brown and the thirty-two individuals, or a number of smaller conspiracies. The Court firmly held that the evidence established the existence of a number of smaller conspiracies, rather than one vast conspiracy. Id. at 770, 66 S.Ct. at 1250, 90 L.Ed. at 1569.
Indeed, in Blumenthal, the Court found a single, all-encompassing conspiracy and distinguished that situation from the multiple, separate conspiracies in Kotteakos, as follows:
[E]ach separate agreement had its own distinct, illegal end. Each loan was an end in itself, separate from all others, although all were alike in having similar illegal objects. Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme, both in the phase of agreement with Brown and also in the absence of any aid given to others as well as in specific object and result. There was no drawing of all together in a single, over-all comprehensive plan.

*1123 [Blumenthal, supra, 332 U.S. at 558, 68 S.Ct. at 257, 92 L.Ed. at 169.]
Here, we believe the evidence adduced by the State against defendant more closely replicates the Kotteakos model than the Blumenthal model. Although the Lichtman scheme involved many Newark School Board employees, the ability to prepare and file a false claim required only two persons: Dr. Lichtman and the employee. Burns testified that her initial contact with Dr. Lichtman did not involve a third party. Rather, she obtained Lichtman's telephone number from a posting on the bulletin board in her school cafeteria. Even when a runner was used, no more than three people were involved in the submission of a claim.
The State argues that the evidence supported a massive conspiracy to defraud the State Health Benefits Program. It contends that the evidence shows that defendant knew of the scheme and that the scheme was common knowledge throughout the Newark School system. The State did not, however, charge defendant with the entire conspiracy. Rather, as to defendant, it defined the scope of the conspiracy as the relationship among Lichtman, Burns and the persons brought to Lichtman by Burns.
An examination of the evidence submitted by the State against defendant reveals not a scintilla of evidence that defendant knew that Burns had been a runner or go-between for other employees. Neither Johnson nor Burns testified that Burns informed defendant she had served as a connection between the doctor and other employees. In fact, Burns testified that she only gave defendant the doctor's telephone number. She did not even tell defendant that she had filed a claim for herself. The State also submitted no evidence that defendant knew the other school employees (Taft, Callendar, Flagg and Abdussabur) Burns had referred to Lichtman. The State's evidence did show that all of the other employees, as well as Burns, were assigned to schools other than the school at which defendant was employed. The State's evidence also demonstrated that the participation of the other employees in the Lichtman-Burns chain was not necessary to submission and collection of the false claims submitted in defendant's name. Therefore, we conclude that the evidence fails to support the conviction of second degree conspiracy to commit theft by deception in excess of $75,000. This conviction is vacated. We do not disturb the third degree theft by deception conviction.

II
The State asserts that defendant's actions constitute official misconduct because she was employed as a security guard by the Newark Board of Education and spoke to Burns about the scheme on school premises, while in uniform and on duty. According to the State, these circumstances were sufficiently related to her official status to constitute the crime of official misconduct. We disagree and vacate the convictions for second degree conspiracy to commit official misconduct and second degree official misconduct.
Defendant was charged and convicted under N.J.S.A. 2C:30-2a which provides in pertinent part:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner[.]
Here it is undisputed that defendant was a public official and acted with the purpose *1124 to obtain a benefit to which she was not entitled. The issue is whether her conduct was sufficiently related to her office to constitute official misconduct. The State asserts that defendant's job was to prevent criminal acts on the premises and her affirmative acts while on duty were contrary to her job responsibilities.
The official misconduct statute is aimed at preventing "the abuse of government power for personal benefit." State v. Vickery, 275 N.J.Super. 648, 651, 646 A.2d 1159 (Law Div.1994). Examples of conduct that have been found to constitute official misconduct are sexual misconduct by a police officer while conducting a motor vehicle stop, State v. Stevens, 203 N.J.Super. 59, 495 A.2d 910 (Law Div. 1984), modified, 222 N.J.Super. 602, 537 A.2d 774 (App.Div.1988), aff'd, 115 N.J. 289, 558 A.2d 833 (1989); facilitating the payment of bribes to obtain a rent increase not otherwise permitted, State v. Bryant, 257 N.J.Super. 63, 607 A.2d 1343 (App.Div. 1992); a teacher exposing young students to inappropriate material, State v. Parker, 124 N.J. 628, 592 A.2d 228 (1991), cert. denied, 503 U.S. 939, 112 S. Ct. 1483, 117 L.Ed.2d 625 (1992).
Defendant had no official functions relating to law enforcement. She was neither a police officer nor an investigator. Her duties were confined to preventing unauthorized persons from entering the school. Her actions in joining the scheme had nothing to do with her status as a security guard but everything to do with her public employment and participation in the State Health Benefits Program. According to the State's position, every public employee who submitted a false claim to the State Health Benefits Program would be guilty of official misconduct. This interpretation is beyond the scope of the statute.
In conclusion, we vacate the second degree conspiracy to commit theft by deception in excess of $75,000 and the second degree convictions of conspiracy to commit official misconduct and the substantive offense of official misconduct. Defendant's actions, however, clearly support the conviction of third degree theft by deception. Due to our disposition of the second degree convictions, the matter must be remanded for resentencing on the single, third degree conviction.
Reversed in part; affirmed in part; and remanded for resentencing.