810 A.2d 88 (2002)
355 N.J. Super. 296
STATE of New Jersey, Plaintiff-Appellant,
v.
James I. MASON and Sydelle Mason, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 2002.
Decided November 25, 2002.
*89 Peter C. Harvey, Acting Attorney General, attorney for appellant (Susan Kase, Deputy Attorney General, of counsel and on the brief).
Poplar and Eastlack, attorneys for defendant-respondent James Mason, Weir & Partners, attorneys for defendant-respondent Sydelle Mason (Teri S. Lodge, and Richard P. Coe, on the joint brief).
Before Judges PRESSLER, WALLACE, JR. and HOENS.
The opinion of the court was delivered by HOENS, J.A.D.
Defendants James I. Mason and Sydelle Mason were charged in a four-count indictment with conspiracy, theft by deception, misconduct by corporate officials and official misconduct. The Law Division judge granted their motion to dismiss count four of the indictment, which charged them with official misconduct and the State's motion for reconsideration was denied. We granted the State leave to pursue this interlocutory appeal from the dismissal of count four. We affirm.
An indictment should only be dismissed when it is "manifestly deficient or palpably defective," State v. Hogan, 144 N.J. 216, 229, 676 A.2d 533 (1996), citing State v. Wein, 80 N.J. 491, 501, 404 A.2d 302 (1979), and then only when the grounds for the dismissal can be described as the "clearest and plainest." State v. Perry, 124 N.J. 128, 168, 590 A.2d 624 (1991), quoting State v. New Jersey Trade Waste Assn., 96 N.J. 8, 18-19, 472 A.2d 1050 (1984). Moreover, where the "indictment alleges all the essential facts of the crime, the charge is sufficiently stated and the indictment should not be dismissed unless its insufficiency is `palpable.' " State v. New Jersey Trade Waste Assn., supra, 96 N.J. at 19, 472 A.2d 1050, quoting State v. LaFera, 35 N.J. 75, 81, 171 A.2d 311 (1961).
Nevertheless, "the decision whether to dismiss an indictment lies within the discretion of the trial court," State v. Hogan, supra, 144 N.J. at 229, 676 A.2d 533, citing State v. McCrary, 97 N.J. 132, 144, 478 A.2d 339 (1984), and in the absence *90 of an abuse of that discretion, we will not disturb the determination of the trial court. Ibid., citing State v. Weleck, 10 N.J. 355, 364, 91 A.2d 751 (1952). Indeed, where the indictment is factually unsupported either on its face or in the grand jury proceedings, the dismissal is appropriate. See State v. Moscato, 253 N.J.Super. 253, 260, 601 A.2d 743 (App.Div.1992), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992); State v. Vasky, 218 N.J.Super. 487, 490-91, 528 A.2d 61 (App.Div.1987).
James Mason is the Chairman and President of the Board of Trustees and is also the Chief Executive Officer (CEO) of Archway Programs, Inc. (Archway), a non-profit corporation serving the needs of persons with certain disabilities. Archway provides a variety of services for disabled children and their families and for disabled adults, at locations in Pennsylvania and New Jersey. It provides services through its three divisions, the Early Childhood. Division, the Human Services Division and the Education Division. Its programs are funded by a combination of public sources, grants, and private fund-raising efforts. Much, but not all, of the funding for the programs in its Education Division comes from tuition paid by local school districts which place handicapped students in the school operated by that division. Sydelle Mason, who is the wife of James Mason, was first a teacher and then the Executive Director of the Early Childhood Division, until September 24, 1996, when she was promoted to the position of Chief Operating Officer of Archway.
Prompted by an anonymous letter in 1995, the Department of Education (DOE) conducted an audit and then an investigation into the finances of the Education Division. The DOE contends that the investigation uncovered fraud and mismanagement in the operation of the programs in that division, including diversion of funds from that division through Archway to pay the personal obligations of the Masons and reallocation of salaries of personnel who did not work for that division to that division's budget. These charges against that budget allegedly resulted in inflated tuition rates charged to public school systems that had placed children in the Archway Educational Division. Both James Mason and Sydelle Mason were indicted in 1998 and resigned their positions thereafter.
The only issue in this interlocutory appeal is whether the Masons are public servants, for if they are, then they were appropriately charged in count four of the indictment with the crime of official misconduct and if they are not, then that count was properly dismissed. More particularly, the issue before us is whether the officers of a private, non-profit corporation that provides educational programs for handicapped students placed there at public expense are public servants or whether they are merely government contractors and thus not properly characterized as public servants.
The crime known as official misconduct is defined in N.J.S.A. 2C:30-2 as follows:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which *91 another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.
Official misconduct therefore "has three elements: (1) the defendant is a public servant, (2) who committed an act relating to his office, (3) with purpose to benefit himself or deprive another of a benefit." State v. Bullock, 136 N.J. 149, 153, 642 A.2d 397 (1994). A public servant is defined as "any officer or employee of government... and any person participating as a juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. 2C:27-1(g).
In general, misconduct in office or official misconduct is defined as unlawful behavior in relation to official duties by an officer entrusted with the administration of justice or who is in breach of a duty of public concern in a public office. State v. Winne, 12 N.J. 152, 176, 96 A.2d 63 (1953). Public office has been defined to mean "a place in a governmental system created or recognized by the law of the state which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties." State v. Williams, 189 N.J.Super. 61, 66, 458 A.2d 1295 (App.Div.), certif. denied, 94 N.J. 543, 468 A.2d 193 (1983) (quoting Fredericks v. Board of Health, 82 N.J.L. 200, 201, 82 A. 528 (Sup.Ct.1912)). We have previously drawn a distinction between one who is a public official or government officer and one who merely performs services pursuant to a government contract, holding that only the former can appropriately be charged with official misconduct. Ibid.; see also State v. Indelicato, 87 N.J.Super. 566, 569, 210 A.2d 233 (Law Div.1965). A contract by its very nature is limited both in terms of the rights and obligations of the parties and in terms of the duration of the relationship, unlike an office, the nature and scope of which fundamentally transcends a mere contractual relationship. State v. Indelicato, supra, 87 N.J.Super. at 570, 210 A.2d 233.
Here, the State contends that because providing all children with an education is a function of government established by our Constitution, N.J. Const. art. VIII, § 4, ¶ 1, the performance of that task by others, such as the Masons, is the functional equivalent of an act of the government and, therefore, is the performance of a governmental office. While it is quite true that our children are entitled under our Constitution to an education that is both "thorough and efficient," ibid., nothing in that constitutional mandate transforms Archway into an arm of the government or the Masons into public officials. Many alternatives to public schooling are both available and acceptable substitutes for parents and their children, including home schooling, private schools and parochial schools. The government does not, therefore, exclusively provide education for our children.
To be sure, the options available to local public schools and to the parents of our learning disabled students to secure a free and appropriate public education are limited; facilities like Archway fill an important role in providing an education for a population that might otherwise be ill-served through our traditional public schools. But the services that those private educational facilities provide, albeit at public expense, are limited by contract and governed by the terms of those contracts. Moreover, the private facilities of this type are also subject to oversight and regulation by the Department of Education. Nonetheless, they remain private entities providing a service for a fee and governed by contracts subject to annual renewal. *92 The entities that perform these services are private organizations and not governmental agencies or their functional equivalent.
We have in the past recognized that there are certain private entities that carry with them the weight of governmental authority such that their officers are public officials. In Bevacqua v. Renna, 213 N.J.Super. 554, 517 A.2d 1215 (App.Div.1986), we held that a construction code official performed legislatively delegated regulatory functions, thus qualifying him as a person in a public office. Id. at 560, 517 A.2d 1215. Significant to our decision there was that the construction code official was cloaked with the authority to enforce the Uniform Construction Code, thus being empowered to act on behalf of the government. Ibid.
Similarly, in State v. Vickery, 275 N.J.Super. 648, 646 A.2d 1159 (Law Div.1994), the court relied on the statutory powers assigned to the Society for the Prevention of Cruelty to Animals (SPCA), see N.J.S.A. 4:22-1 et seq., to support its analysis. There, the court determined that the breadth and scope of the statutory powers vested in the SCPA differentiated it from other charitable organizations, id. at 651, 646 A.2d 1159, and transformed it into a governmental entity. Id. at 652, 646 A.2d 1159. Because the officers of that organization were authorized by statute to apply for warrants, to make arrests, and to carry weapons in performing their statutory mandate, and because they were charged with the responsibility for enforcing regulations for the protection of animals, they were involved in performing public duties and were, therefore, public servants. Id. at 652-53, 646 A.2d 1159. As a result, they were properly charged with a violation of the official misconduct statute when they abused that governmental role for their personal benefit. Our decision in State v. DeCree, 343 N.J.Super. 410, 778 A.2d 1119 (App.Div.), certif. denied, 170 N.J. 388, 788 A.2d 772 (2001), is similar. There, while all parties agreed that a school security guard's enforcement authority elevated her to the status of a public officer, her submission of false medical claims did not touch upon her official duties. We therefore vacated her conviction for official misconduct, holding that the appropriate charge, for which she had also been convicted, was theft by deception. Id. at 418, 778 A.2d 1119.
While we have thus held that some private entities and individuals perform roles that transform them into public officials, we have distinguished between these regulatory roles and other activities. In State v. Williams, for example, we held that the executive director of a private charitable organization supported by government funding was not a public official but was merely a party to a government contract. State v. Williams, supra, 189 N.J.Super. at 66, 458 A.2d 1295. We thus have drawn a distinction between one who merely performs an act or service limited by contract and one who performs a regulatory function or enforces regulations in the name of the State. Only the latter fall within our definition of public servants.
We note as well the analogous reasoning of our state and federal courts in decisions addressing state action. As the Supreme Court of the United States has held, "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker v. Kohn, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418, 427 (1982). The Rendell-Baker analysis is especially significant because the issue there was whether a private school which, like Archway's Education Division, derived income almost exclusively from public funds *93 and which was regulated by the Department of Education, acted under color of state law in discharging certain employees. The central issue addressed by the Court was whether a private educational corporation funded almost entirely with public money was engaged in state action, exposing it to a civil rights claim. See 42 U.S.C.A. § 1983. The Supreme Court held that it was not, noting that many private entities are largely dependent on state funding, including corporations organized to operate nursing homes, build roadways and construct bridges. Rendell-Baker v. Kohn, supra, 457 U.S. at 840-41, 102 S.Ct. at 2771, 73 L.Ed.2d at 427-28. Thus, the source of funding alone is insufficient to transform a private entity into a public one. More to the point, however, the Court specifically addressed the argument that, because providing an education is a public function, an entity that undertakes to do so engages in state action. The Court, pointing out that education has never been exclusively provided by the State even when it is provided at public expense, id. at 842, 102 S.Ct. at 2772, 73 L.Ed.2d at 428, held that "a private entity [that] performs a function which serves the public does not make its acts state action." Ibid. The Court drew the same distinction we draw here, that there is a difference between public acts and public contracts; merely because the object of the contract is the providing of education, the fundamental nature of the undertaking is not transformed from contract to office and he who performs the function is not transformed from contractor to official. Our decisions in the context of state action are consistent with this analysis. See Hernandez v. Don Bosco Preparatory High, 322 N.J.Super. 1, 15, 730 A.2d 365 (App.Div.), certif. denied, 162 N.J. 196, 743 A.2d 848 (1999) (state funded private high school did not engage in state action in expelling student).
Here, we perceive no difference between the functions performed by Archway and the Masons pursuant to their contracts respecting the education of children and the functions performed by the defendant in Williams. Nothing in the function performed by them, nothing in the powers granted to them and nothing in the record before us supports the conclusion that the defendants are anything other than private citizens performing services pursuant to government contracts. We, therefore, perceive no error in the decision of the motion judge dismissing count four. The order of the trial court dismissing count four of the indictment is affirmed.