

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-1995

# Orsatti v. New Jersey State Police

Precedential or Non-Precedential:

Docket 94-5757

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Orsatti v. New Jersey State Police" (1995). *1995 Decisions.* Paper 295.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/295

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5757



ARNOLD ORSATTI, JR. and REBECCA ORSATTI,
Appellees

v.

NEW JERSEY STATE POLICE; DAVID V. BRODY,
Deputy Attorney General of the State of New
Jersey; JOSEPH GUZZARDO, New Jersey State
Police Officer;  ROBERT KIRVAY, New Jersey
State Police Officer; ALBERT BLACK; and
CLINTON L. PAGANO, Former Superintendent of
New Jersey State Police,

ROBERT KIRVAY and JOSEPH GUZZARDO,
Appellants.

On Appeal from the United States District Court for the District
of New Jersey
(D.C. Civil No. 91-3023)


Argued September 20, 1995
Before:  BECKER and COWEN, Circuit Judges, and LANCASTER,
District Judge.[1]

(Opinion Filed:  November 22, l995










---

[1]      The Honorable Gary L. Lancaster, United States District
Judge  for  the  Western  District  of  Pennsylvania,  sitting  by
designation.


1

Carl Greenberg, Esq., (Argued)
Darryl Beckman, Esq.
Budd, Larner, Gross, Rosenbaum
Greenberg & Sade
150 J.F.K. Parkway, CNN 1000
Short Hills, NJ 07078
  Attorneys for Appellant    Robert Kirvay

George F. Kugler, Esq.,
(Argued)
John C. Connell, Esq.
Archer & Greiner
One Centennial Square
Haddonfield, NJ 08033
  Attorneys for Appellant    Joseph Guzzardo

Louis M. Barbone, Esq.,
(Argued)
Lynn Marie Handler, Esq.
Jacobs & Barbone
1125 Pacific Avenue
Atlantic City, NJ  08041
  Attorneys for Appellees    Arnold Orsatti,
Jr. and
  Rebecca Orsatti

**OPINION OF THE COURT**

GARY L. LANCASTER,

District Judge.

This case arises under the Civil Rights Act of 1871, 42 U.S.C. § 1 Plaintiff-appellee, Arnold Orsatti, Jr., alleges that he was arrested wit probable cause in violation of his Fourth Amendment right to be free unreasonable seizure. Defendant-appellants, New Jersey State Police Offi Robert Kirvay and Joseph Guzzardo, appeal from the district court's order den their joint motion for summary judgment. The officers contend that the dist court erred because they

2

are shielded from Orsatti's claim by the doctrine of qualified immunity.

Because we find that the undisputed material facts of record establish

it was objectively reasonable for the officers to conclude that they had prob

cause to arrest Orsatti, we hold that the officers are immune from Orsatti's cl

Accordingly, we reverse.


I.

The complete factual and procedural background of this case is consider

more complex than the court's treatment here. What follows, however, are t

facts and procedures material to the issue on appeal.

In December of 1988, New Jersey State Police began an investigation, n

"Operation Comserv," into alleged bribery, corruption, and other misconduct

Atlantic City, New Jersey public officials.  Officers Kirvay and Guzzardo wer

charge of the investigation; however, the principal operative was Albert Blac

government confidential informant.  The investigation culminated on July 27, 1

with the arrest of eight individuals, including Orsatti.

Orsatti and the others were arrested pursuant to criminal complaints

warrants issued by the Superior Court of New Jersey.  In the aggregate, t

criminal complaints alleged a variety of corrupt acts.  However, the compl

issued against Orsatti charged him only with official misconduct under N.J. S

Ann. 2C:30-2 and conspiracy to commit official misconduct under N.J. Stat.

2C:5-2, and the complaint related only to his role in attempting to acquire

Black a gift shop concession contract at the Atlantic City Airport.  At the tim

his arrest, Orsatti was an Atlantic City Councilman and Chairman of the

Council Transportation Committee.

Thereafter, a State Grand Jury returned indictments against each of t

arrested.  The Grand Jury indicted Orsatti for conspiracy to commit racketeerin

3

violation of N.J. Stat. Ann. 2C:41-2(d) and conspiracy in violation of N.J. S
Ann. 2C:5-2. The case against all criminal defendants was called to trial on A
22, 1991.  Following the close of the State's case, the trial judge grante
judgment of acquittal to Orsatti and several of the other criminal defenda
Eventually, the jury acquitted all of the remaining criminal defendants, save
of the charges.

Thereafter, Orsatti filed this civil rights action. Orsatti's complaint
broad in scope and asserts claims under both federal and state law.  Moreover
challenges virtually every aspect of his investigation, arrest, and prosecut
and he names as defendants essentially every individual involved in Opera
Comserv.  In this appeal, however, we are only concerned with Orsatti's claim
Kirvay and Guzzardo violated the Fourth Amendment prohibition against unreason
seizures. Specifically, Orsatti alleged that the officers carried out Opera
Comserv in a negligent and incompetent manner. Orsatti further alleged that
officers had neither probable cause to arrest him, nor an objective good f
belief that he was guilty of the offense charged.

At the close of discovery, Kirvay and Guzzardo filed a joint motion

summary judgment contending that they are entitled to judgment on Orsat

unlawful arrest claim under the doctrine of qualified immunity.  The district c

denied the motion and held that whether the officers were entitled to immu

rested upon disputed questions of fact that the jury had to resolve.  This ap

followed.


II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review an order den

a claim of immunity raised by a defendant in a motion for summary judgm

Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985).  The standard of re

applicable to an order denying summary judgment is plenary, Bixler v. Central

Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir. 1993), and "

review, the appellate court is required to apply the same test the district c

should have utilized initially." Goodman v. Mead Johnson & Co., 534 F.2d 566,

(3d Cir. 1976).

Summary judgment may be granted if, drawing all inferences in favor of

nonmoving party, "the pleadings, depositions, answers to interrogatories,

admissions on file, together with the affidavits, if any, show that there is

genuine issue as to any material fact and that the moving party is entitled

judgment as a matter of law."  Fed.R.Civ.P. 56(c).

An otherwise properly supported motion for summary judgment will not

defeated by the mere existence of some factual dispute between the part

However, a dispute over those facts that might affect the outcome of the suit u

the governing substantive law, i.e., the material facts, will preclude the entr

summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19

Similarly, summary judgment is improper so long as the dispute over the mate

5

facts is genuine.  In determining whether the dispute is genuine, the cou function is not to weigh the evidence or to determine the truth of the matter, only to determine whether the evidence of record is such that a reasonable could return a verdict for the nonmoving party.  Id.

## III.

### A.

Kirvay and Guzzardo argue that the district court erred in denying t joint motion for summary judgment.  They contend that they are immune Orsatti's suit because the undisputed material facts of record establish that were objectively reasonable in concluding that probable cause existed to ar Orsatti for the crime of official misconduct.  We agree.

The general principles of law that govern this case are well sett Broadly stated, the Fourth Amendment prohibits a police officer from arresti citizen except upon probable cause.  Papachristou v. City of Jacksonville, 405 156, 169 (1972).  Probable cause to arrest requires more than mere suspic however, it does not require that the officer have evidence sufficient to p guilt beyond a reasonable doubt. See United States v. Glasser, 750 F.2d 1197, (3d Cir. 1984). Rather, probable cause to arrest exists when the facts circumstances within the arresting officer's knowledge are sufficient in themse to warrant a reasonable person to believe that an offense has been or is b committed by the person to be arrested.  United States v. Cruz, 910 F.2d 1072, (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)).  Wh police officer does arrest a person without probable cause, the officer may liable in a civil rights suit for damages.  Pierson v. Ray, 386 U.S. 547 (1967)

Nevertheless, "government officials performing discretionary functi generally are shielded from liability for civil damages insofar as their con

6

does not violate clearly established statutory or constitutional rights of whi

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

(1982).  Government officials, such as police officers, are accorded quali

rather than absolute immunity in order to accommodate two important interests:

officials' interest in performing their duties without the fear of consta

defending themselves against insubstantial claims for damages, and the publ

interest in recovering damages when government officials unreasonably invade

violate individual rights under the Constitution and laws of the United Sta

Anderson v. Creighton, 483 U.S. 635, 639 (1987).

Because the qualified immunity doctrine provides the official with immu

from suit, not simply trial, Puerto Rico Aqueduct and Sewer Auth. v. Metcal

Eddy, Inc., 506 U.S. 139 (1993), the district court should resolve any immu

question at the earliest possible stage of the litigation.  Creighton, 483 U.S

646 n.6.  When the material facts are not in dispute, the district court may de

whether a government official is shielded by qualified immunity as a matter of

Id.

Typically, the dispositive issue in these types of cases is whether the r

at issue was "clearly established" at the time the official acted.  In this c

however, there is no question that the right at issue, namely, the right to be

from arrest except on probable cause, was clearly established at the time

Orsatti's arrest.  Finding that the right at issue was clearly establis

however, does not end the court's inquiry.  Nor does the court's decision

merely on whether the official violated that clearly established right.  On

contrary, the Supreme Court has recognized that it is inevitable that

enforcement officers will in some cases reasonably but mistakenly conclude

probable cause to make an arrest is present.  The Court has made clear that in

7

cases those officers, like other officials who act in ways they reasonably bel[ieved]
to be lawful, will not be held personally liable.  Id. at 641.

In Malley v. Briggs, 475 U.S. 335 (1986), the Supreme Court, in a da[mages]
action under 42 U.S.C. § 1983, established the degree of immunity to be accord[ed a]
police officer who arrests a citizen after presenting a judge with a complaint [and]
supporting affidavit that allegedly fails to establish probable cause.  The C[ourt]
held that whether a police officer is immune is governed by the same standard [of]
objective reasonableness that applies in the context of a suppression hearing u[nder]
United States v. Leon, 468 U.S. 897 (1984).  Under this standard, only where [the]
warrant application is "so lacking in indicia of probable cause as to re[nder]
official belief in its existence unreasonable," will the officer lose the shiel[d of]
immunity. Malley, 475 U.S. at 341.  The Court further held that the standard [for]
determining the reasonableness of an official's belief in the existence of prob[able]
cause is whether a reasonably well-trained officer would have known that [the]
affidavit failed to establish probable cause and that he therefore should not [have]
applied for the warrant under the conditions.  Id. at 345.

According to this standard, the qualified immunity doctrine "gives ample [room]
for mistaken judgments" by protecting "all but the plainly incompetent or those [who]
knowingly violate the law." Id.

B.

In this case, the district court held that Kirvay and Guzzardo were [not]
entitled to summary judgment on their qualified immunity defense for two dist[inct]
reasons.  First, the district court found that summary judgment was impr[oper]
"because the plaintiff's allegations suffice to allege conduct that violated [a]
clearly established constitutional right to be free from arrest without prob[able]
cause . . ."  Orsatti v. New Jersey State Police, No. 91-3023, slip op. at

8

(D.N.J. Nov. 2, 1994). Of course, the district court would have been correct the matter been before the court on a motion to dismiss under Fed.R.Ci 12(b)(6). The matter before the district court, however, was a motion for sum judgment under Fed.R.Civ.P. 56. Summary judgment is designed to go beyond pleadings in order to assess whether a genuine issue of material fact exists whether a trial is necessary.

Accordingly, a plaintiff cannot resist a properly supported motion

summary judgment merely by restating the allegations of his complaint, but

point to concrete evidence in the record that supports each and every essen

element of his case. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Therefore,

mere fact that Orsatti's allegations, if true, state a claim is an insuffic

basis for the district court to deny the officers' motion for summary judgment.

Second, the district court found that there remained an issue of mate

fact regarding whether the officers conducted Operation Comserv negligently.

support of its finding, the district court relied on the expert report of Ric

Kobetz, Doctor of Public Administration. Dr. Kobetz opined that the state po

conducted Operation Comserv in a reckless and grossly negligent manner beca

(1) they did not conduct a focused investigation; (2) they did not train Mr. B

to properly operate the wireless transmitter they supplied him with; (3) they

not instruct Mr. Black to properly utilize equipment they had supplied him w

and (4) they did not supervise his criminal investigatory procedures and strat

nor his handling of money, expenditures, and equipment. The district court

that this evidence precluded summary judgment because, in the court's view,

Orsatti were to succeed at proving that the officers carried out Operation Com

in a negligent manner, he might convince the jury that no reasonable person in

police officers' shoes could have reasonably believed that the criminal prosecu

was lawful. Orsatti, No. 91-3023, slip op. at 52. The district court's reason

however, was flawed.

The obligation of local law enforcement officers is to conduct crim

investigations in a manner that does not violate the constitutionally prote

rights of the person under investigation. Therefore, whether the offi

conducted the investigation negligently is not a material fact. Indeed, for Fo

Amendment purposes, the issue is not whether the information on which po

10

officers base their request for an arrest warrant resulted from a profession[al] executed investigation; rather, the issue is whether that information would war[rant] a reasonable person to believe that an offense has been or is being committe[d by] the person to be arrested.

Therefore, in order to assess whether Guzzardo and Kirvay are entitle[d to] immunity on Orsatti's Fourth Amendment unlawful arrest claim, the district c[ourt] should have focused on the information the officers had available to them, no[t on] whether the information resulted from exemplary police work. Upon our review [of] that information, we find that it was objectively reasonable for the officer[s to] conclude that they had sufficient information to believe that Orsatti had commi[tted] the crime of official misconduct.

C.

In support of our conclusion that the officers were objectively reasonabl[e in] believing they had probable cause to arrest Orsatti for official misconduct, [we] turn to the elements of that offense.[2] Under N.J. Stat. Ann. 2C:30-2, Orsatti [can] be found guilty of official misconduct if, (1) he was a public servant at the [time] alleged in the complaint, (2) he committed an act relating to his office kno[wing] the act was unauthorized, or he committed the act in an unauthorized manner, [and] (3) his purpose was to benefit himself or another. <u>State of New Jersey v. Vick</u>[ers], 646 A.2d 1159, 1160 (N.J. Super. Court Law Div. 1994). The statute does [not] require that the public official's "act" constitute a criminal act, only tha[t]

---

[2] For reasons that are unclear, Orsatti focused his appellate arguments on the elements of conspiracy to commit racketeering under N.J.S.A. 2C:41-2(d), which is the subject of his state common law malicious prosecution claim. However, Orsatti's malicious prosecution claim is not the subject of this appeal. Appellants have appealed only the district court's order rejecting their qualified immunity defense on the Fourth Amendment unlawful arrest claim.

11

embody an unauthorized exercise of his official functions.  N.J. Stat. Ann. 2C
2(a).

The information that the officers relied on to support their conclusion
probable cause existed to arrest Orsatti for official misconduct was gathered
taped conversations secretly recorded by Black, the government's confiden
informant.  A synopsis of the taped conversations was later placed in Kirv
affidavit of probable cause and was presented to the New Jersey Superior C
judge in support of the request for the criminal complaint and warrant
Orsatti's arrest.

Specifically, on July 16, 1989, Black recorded a conversation bet
himself, Jack Wolf, a public relations agent for Pan Am World Services, Inc.,
Orsatti.  The conversation took place at Cousin's Country Inn in Egg Ha
Township, New Jersey.  The purpose of the meeting was to discuss Black's prop
to acquire a gift shop concession at the Atlantic City Airport.  Although
record is unclear, apparently Stephen Williams, an airport official, had autho
to decide who, if anyone, would get the concession.

According to the tape, at the meeting Wolf, Orsatti, and Black devised a
whereby Wolf would compose fraudulent letters.  These fraudulent letters w
purport to be from various citizens complaining of the lack of a gift shop at
airport and stressing the need for one.  Black, in turn, would have the let
rewritten in different handwriting styles and then give the fraudulent letter
Orsatti.  Orsatti, in his capacity as an Atlantic City Councilman and Chairma
the City Council Transportation Committee, would then present the letters
Williams to pressure Williams into awarding the gift shop contract to Black.

On July 18, 1989, Black recorded a second conversation with Wolf.  Accor
to the tape, Wolf gave the fraudulent letters to Black and instructed Black
deliver them to Orsatti later that day.  As Wolf instructed, Black met with Ors

12

in Atlantic City and again recorded their conversation.  According to the t

Black gave the fraudulent letters to Orsatti, and Orsatti indicated that he w

give the letters to Williams at a meeting they had scheduled for the following

On July 19, 1989, New Jersey State Police detectives conducted a phys

surveillance at the Atlantic City Airport and, at approximately 12:50 p.m.,

Orsatti meet with Williams. Two days later, Black called Orsatti and again reco

the conversation.  According to the tape, when the conversation turned to Orsat

July 19 meeting with Williams, the following exchange took place:

Black:    At your news conference.  How did things go?

Orsatti:  Good.

Black:    These letters work all right?

Orsatti:  What?

Black:    The letters work all right?

Orsatti:  Yea, yea.

Black:    Did you talk to our friend Williams and all?

Orsatti:  He said we're having a gift shop.

Black:    That's great, that's great.

Orsatti does not contend that the officers tampered with, changed, or alt

the tapes in any way, nor does Orsatti contend that the officers misrepresented

text of the taped conversations in the affidavit of probable cause presented to

New Jersey Superior Court judge.  Orsatti does, however, point out that Willi

in his Grand Jury testimony, denied speaking with Orsatti about the gift

matter and also denied receiving the fraudulent letters from Orsatti.  Alth

disconcerting, this fact is not material, because we must determine whether

arrest was objectively reasonable on the basis of the information the officers

available at the time of arrest, not thereafter.

13

In summary, the undisputed facts of record establish that at the time

Orsatti's arrest, the officers had tape recordings that indicated that Ors

participated in formulating a scheme to acquire the airport gift shop conces

for Black's benefit, in part by fraudulent means, i.e., forged letters

nonexistent citizens. According to the tapes, Orsatti received the fraudu

letters, and he agreed to deliver those letters to Williams, the airport offic

At the time, Orsatti was acting in his capacity as an Atlantic City Council

Orsatti was observed speaking with Williams at the appointed time and place,

Orsatti expressly reassured Black that the letters were effective.

Under these undisputed material facts, we are satisfied that no rational

could find that the officers were objectively unreasonable in concluding t

based on the information available to them at the time, they had probable caus

believe that Orsatti's conduct constituted the crime of official miscond

Kirvay and Guzzardo are, therefore, immune from this claim.

## IV.

For the foregoing reasons we reverse the district court's order of Nove

2, 1994, insofar as it denied defendant-appellants Kirvay's and Guzzardo's j

motion for summary judgment on plaintiff-appellee Orsatti's section 1983 claim

arrest without probable cause.

14