PAUL NOLAN, PETITIONER-RESPONDENT, v. PABSCO CORPORATION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 5, 1956—Decided October 11, 1956.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Isidor Kalisch* argued the cause for appellant.

*Mr. John F. McCann* argued the cause for respondent.

The opinion of the court was delivered by
GOLDMANN, S. J. A. D.  Pabsco Corporation appeals from a judgment entered in the Bergen County Court, Law Division, affirming an award granted petitioner Paul Nolan by the Division of Workmen's Compensation.

Pabsco had a trucking yard at 92 River Road, Bogota, where, besides repairing trucks, it did trucking for the paper industry.  On the day of the accident petitioner had already been employed by Pabsco for some two months as a yardman, his duties consisting, in part, of handling motor vehicle equipment in and about the yard and driving trucks to and from local companies for loading and unloading. He began work at 4 P. M. that day and made several deliveries. Upon returning to the Pabsco yard at about 9 P. M., yard supervisor Harry Nolan, who is petitioner's father, directed petitioner to tow a certain Ford car out of the yard to make room for trailers needed for a pier shipment, and then to return to the yard to help him finish the work he was doing.

Petitioner proceeded to hook the Ford onto the company tractor and towed it out of the yard.  One Sonheim was riding in the Ford.  Petitioner testified that as he left the yard he turned right on River Road and drove for a short distance until he came to the underpass and West Shore Avenue, an intersecting street.  At that point the Ford "blew up."  Petitioner made a left-hand turn on West

Shore Avenue, stopped, and then unhooked the tractor and drove it about 75 feet forward. He ran back to the Ford and tried to put out the fire. While doing so, the tractor rolled back, knocked him down and ran over him, with resultant serious injuries.

On cross-examination petitioner said that the Ford belonged to his father, had been in the yard for some two months, and that his father had sold the car to Sonheim. He admitted that he and Sonheim had worked on the car for a couple of weeks previously, installing a new motor, and that Sonheim had obtained license plates for the car. He also admitted that he had intended to tow the car to Sonheim's home on West Grove Street, Bogota. Sonheim's home could be reached by turning left on River Road after leaving the yard and, upon proceeding a distance, turning right into Grove Street. The route petitioner took when he turned right on River Road, going through the underpass and turning left on West Shore Road, would have taken him to Sonheim's home by a longer and more circuitous path. Petitioner explained that he had turned right on River Road through force of habit; he was "just used to making a right-hand turn all the time coming out of my yard." He vigorously denied that the motor of the Ford had been started up in the Pabsco yard, or that he attempted to move the Ford with the use of the rebuilt motor, or that what he was actually trying to do was to test the motor to see if it was all right. He did not know whether Sonheim had turned the ignition on while the Ford was being towed. Sonheim was not available as a witness because he was serving in the Armed Forces in Germany.

The father, Harry Nolan, testified that petitioner was under his direct supervision, and confirmed the fact that he had directed him to pull the Ford out of the yard because he needed the room for the export job. On cross-examination he stated that the car was not his but belonged to Sonheim, and that he had lent the young man a few dollars on it. He was then shown two sheets of paper bearing his signature, and said they had been written out by

one McGeary, claims investigator for the insurance carrier, but that he had not read them before signing. He admitted having talked with McGeary before this was done, but not about the accident. Nolan was then asked where he thought "they [apparently petitioner and Sonheim] were going to take that car with a tractor, not knowing whether the Ford could go on its own motion or not"; he replied that he did not know where they were going to take it—"I only told them to take it out of the yard."

Respondent employer presented medical testimony as to the extent of petitioner's permanent disability, and only two other witnesses. The first was an engineer who used a map to locate the Sonheim home and the two courses of travel from the Pabsco yard to that place. The other was claims investigator McGeary, who testified as to the circumstances surrounding the taking of Harry Nolan's statement and what Nolan had said at the time. The offer of the statement in evidence was objected to, and the objection sustained by the deputy director.

■■ We first deal with this ruling. Respondent claims it offered the statement for the purpose of attacking Nolan's credibility, not to establish an admission against interest, and the statement should therefore have been allowed in evidence. The contention has no merit. The rule is that where it is sought to attack the credibility of a witness by use of his prior and allegedly inconsistent written statement, the party offering the statement must first lay a foundation therefor. This must be done by calling the attention of the witness to the contents of the paper, and then specifically asking him whether he had not made the several statements contained therein. *Wassmer v. Public Service Electric & Gas Co.*, 122 *N. J. L.* 367, 372–373 (*E. & A.* 1939), quoting with approval from *Daum v. North Jersey Street Ry. Co.*, 69 *N. J. L.* 1, 6 (*Sup. Ct.* 1903), affirmed *o. b.* 70 *N. J. L.* 338 (*E. & A.* 1904); *State v. Cappiello*, 107 *N. J. L.* 249, 252–253 (*E. & A.* 1930); *State v. Pitman*, 98 *N. J. L.* 626, 628–629 (*Sup. Ct.* 1923); and see, generally, 3 *Wigmore on Evidence* (*3d ed.* 1940),

§§ 1017–1019, *pp.* 684 *ff.,* and 1955 *Pocket Part, p.* 179. There was no such interrogation here; the witness was not first asked whether he had made any of the statements contained in the signed sheets and given an opportunity to deny or explain.

But all this to one side, Pabsco's cause was not prejudiced because McGeary, who took the statement, testified to the substance of what Nolan said, after first using the statement to refresh his memory.

Pabsco seeks to avoid liability because, it is claimed, petitioner did not successfully discharge the burden that was his of establishing by a preponderance of the credible evidence that his injuries arose out of and in the course of the employer's business. It argues that the moving of the Ford car from the trucking yard was not the result of any actual direction by the supervisor to the petitioner that he remove the car in order to make needed room for trailers, but that petitioner moved the car to serve his father's private purpose, or the purposes of petitioner and his friend Sonheim, who was the owner of the Ford and in the car at the time it was being towed. To establish this factual contention, respondent points to certain contradictions and suspicious elements in the record, among them: (1) In the claim petition petitioner states that he towed the car "to a parking yard," unhooked the tow chain and was pulling away when he observed that the car was on fire, and that he then parked the tractor, went back to put out the fire, and that the tractor rolled back and over him ("in the roadway," says the petition). At the hearing, however, the story was that the fire occurred in the street while the Ford was being towed, and not in a parking area. (2) There was the contradiction in the testimony of petitioner and his father as to who owned the Ford. (3) There was the suspicious circumstance that Sonheim and Tripani, petitioner's friend, were on hand when the car was moved out of the yard, that the car had a rebuilt motor, and Sonheim had newly issued license plates. (4) The car was "gassed up." (At oral argument respondent admitted there was no proof of this.)

Counsel argued that these circumstances, in the aggregate, strongly tend to support an inference that the moving of the Ford was planned for the benefit of the owner Sonheim, with petitioner's cooperation, for the purpose of seeing whether they could get the car to travel under its own power after towing it out of the yard, and not merely to remove it for the purposes of the employer. It may readily be admitted that some of the circumstances to which respondent points throw the shadow of suspicion upon the truth of the claim. However, we have before us a record containing no direct contradiction of the unequivocal story given by petitioner, and corroborated by his father—that the father ordered him to take the car out of the trucking yard to provide needed room. The evidence in attempted refutation is entirely circumstantial.

The opinions filed by the deputy director and the County Court judge show that they believed petitioner's story. Our function in reviewing cases of this sort is well settled: we are to accord "determinative weight" to their concurrent findings of fact. *Trusky v. Ford Motor Co.,* 19 *N. J. Super.* 100, 103 (*App. Div.* 1952). We will reverse only when we are satisfied that the findings are not supported by sufficient evidence. *Jensen v. Wilhelms Construction Co.,* 18 *N. J. Super.* 372, 375–376 (*App. Div.* 1952).

As has repeatedly been said, we review the judgment of the County Court and look to see if there is adequate support for its findings in the record. *Giambattista v. Thomas A. Edison, Inc.,* 32 *N. J. Super.* 103, 112 (*App. Div.* 1954). We conclude that there is.

Respondent's next contention is that, assuming the truth of petitioner's story, it was his duty, in carrying out his father's order, to move the Ford out of the yard, park it nearby, and then return to finish the work on hand. Instead, he undertook to leave the car at the Sonheim home, and instead of taking the most direct path, as he normally would, took a circuitous route. Thus, not only did petitioner not take the car to the nearest convenient place, but he was not

even in the course of taking it to the home of its owner, assuming that that objective would not have operated to take the journey out of the category of connection with the employment. We have already adverted to petitioner's explanation that he turned right on River Road from sheer force of habit. It was his contention that at the point of the accident he was on a course which would have led him in the general direction of Sonheim's home.

The deputy director, who had the benefit of seeing and hearing the witnesses, believed petitioner, and so did the County Court on a review of the record. We have already concluded that there was sufficient credible evidence to support the finding.

There is an incidental question, not argued by respondent, but which suggests itself here: Was petitioner's towing of the car on a roundabout route to Sonheim's home such compliance with the order of his supervisor as to take the incident and the resulting accident out of the scope of the employment? Our approach to this question must be along the broad policy lines revealed in such decisions as *Secor v. Penn Service Garage,* 19 *N. J.* 315 (1955), and *Green v. DeFuria,* 19 *N. J.* 290 (1955). The *Secor* court emphasized the fact that the common law concept of proximate causation does not obtain in workmen's compensation cases. It is enough if the employment is a contributing cause, or "a necessary factor" leading to the accident. The test now approved is that a compensable accident arises out of the employment when the risk is reasonably incidental thereto, and arises in the course of the employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.

An employee's minor deviations while at work, which are the result of ordinary human reactions and habits, and which bring the employee to the place where an accident is produced, will not operate to deprive the employee of his right to compensation. Such deviations may be due to

foolishness, negligence, imprudence, poor judgment, or any other human failing.

Nor can it be argued that petitioner's uncoupling of the tractor and his return to the Ford in order to put out the fire had the effect of taking him out of the scope of his employment. The policy and doctrine enunciated in *Secor* and *Green,* where the authorities are reviewed, would not support any such contention. We therefore hold that there has been no showing of a fatal deviation by petitioner in this case.

The judgment is affirmed.