953 A.2d 1206 (2008)
402 N.J. Super. 277
STATE of New Jersey, Plaintiff-Respondent,
v.
Walter QUEZADA, Defendant-Appellant.
No. A-6472-05T2.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 2008.
Decided August 13, 2008.
*1207 Michelle Joy Munsat, South Orange, argued the cause for appellant (Michael A. Mark, attorney; Ms. Munsat, on the brief).
Mary E. McAnally, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Ms. McAnally, of counsel and on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and C.S. FISHER.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant was convicted of official misconduct, N.J.S.A. 2C:30-2(a)(counts one, three and five), setting false fire alarms, N.J.S.A. 2C:33-3 (counts two, four and six) and committing a pattern of official misconduct, N.J.S.A. 2C:30-7 (count seven), for making false fire alarms as a volunteer firefighter on three separate dates.[1] He was sentenced to concurrent terms of eight years on counts one, three, five and seven, and to five years on counts two, four and six. On this appeal, defendant argues that the convictions on counts one, three, five and seven must be reversed because he received ineffective assistance of counsel and that the convictions for misconduct and pattern of misconduct must be reversed because: "as a matter of law, his conduct was not related to his office"; "he did not derive a `benefit' from his conduct"; "the finding of `benefit'" was against the weight of the evidence; the prosecutor's use of the term "duty" in the summation with respect to defendant's conduct and the judge's failure to give a curative instruction with respect thereto, deprived defendant of a fair trial; and the charge and response to jury questions confused the jury and denied the defendant a fair trial. He further contends his convictions for making false alarms should have merged into the misconduct convictions if those convictions are sustained, and that the pattern of misconduct conviction was only a third degree crime, not a second degree crime, so defendant must be resentenced thereon. He does not challenge the convictions for third degree setting a false alarm.
Defendant contends that his trial counsel was ineffective for not raising a number of thingsthat calling in the false alarm was not related to his office; that defendant did not receive a "benefit" *1208 therefrom for purposes of the misconduct and pattern of misconduct statutes, that there was insufficient evidence defendant received a "benefit"; by not objecting to the summation and charge, and by not arguing that a pattern of misconduct was third degree, not second degree, because his misconduct was making the false alarms, a third degree offense. He essentially makes every substantive contention a basis for his ineffectiveness claim. However, many of the contentions addressed to the misconduct statute and conviction present legal issues which can be raised by motion before or after trial, see Rule 3:10, and which can be, and are, raised on the direct appeal. Hence, we address these arguments in the context of the claims presented without the need to evaluate if counsel's conduct was deficient and affected the result.
We hold that when a volunteer firefighter calls in a false alarm it is misconduct related to a public office or position, and defendant receives a "benefit" by the joy or gratification of participating in the response or even by giving the unit work to keep it in existence. We agree with the State that responding to fires and creating such opportunities for enjoyment or self-gratification is a "benefit" under the statute, and find no insufficiency with the proofs in this case because defendant was identified as the caller, independent of his statement or admission, and the reasonable inferences warrant a finding that he received a "benefit."

I.
Defendant was a volunteer firefighter with the Prospect Park Volunteer Fire Department ("the Department"). He applied to the Department in May 2003, and began four months of training at a firefighter academy in June 2003, graduating in October of that year. Defendant received no compensation for his work because it was voluntary.
Beginning in September 2003, the Department received, and responded to, an increasing number of "false alarms." At a meeting held during December 2003, Jeffrey Vantermolen, then Chief of the Department, discussed the "rash of false alarms" which had been called in. Immediately following a February 21, 2004, false alarm call, Chief Vantermolen contacted the Paterson fire dispatcher, and learned that none of the false alarm calls were being reported "via 911," but instead the caller was directly contacting the Paterson Fire Department by calling its "telephone line," a number which "would bypass police" and was known only to "someone who's familiar with that line even existing." Thus, the police department was never notified of the calls and had no record of the reports. The calls were "voice recorded, but there's no record of the number" calling in.
The Paterson Fire Department had recorded the calls. However, Paterson officials could not locate some of the recordings. Chief Vantermolen listened to the recordings of the December 29, 2003, and January 14 and February 21, 2004, calls, and recognized the defendant's voice as the caller on each of those recordings. Assistant Chief Douglas Struyk subsequently verified the voice identification. Defendant had responded to all of these calls.
On February 23, 2004, the Passaic County Sheriff's Detective Bureau undertook an investigation of the false alarm calls. Detectives Richard Diaz and Don Dolan thereafter met defendant who agreed to accompany the detectives to headquarters. There, the detectives played the tapes of the false alarm calls in the presence of the defendant, who admitted that his voice was on the tape. Detective Diaz advised defendant *1209 of his constitutional rights, which were written on a form pursuant to Miranda v. Arizona.[2] Defendant executed the Miranda form and waived his rights. Defendant admitted making the calls which were on the tapes and several others, and stated he would call "411" and ask to be connected with "Paterson dispatch directly" "[b]ecause every time [he] called 911 they asked too many questions" and "it was faster calling Paterson dispatch directly." He reported the odor of smoke and then "respond[ed] to the calls on the fire truck." On a few occasions defendant identified himself as a firefighter but did not discuss the calls with fellow firefighters or superiors "[b]ecause there were times when we responded to alarms and... the odors of something burning was no longer there at our time of arrival [and he] therefore did not want to get in trouble for it."
There is no contention that the statement was involuntary or that there was not a knowing, voluntary waiver of defendant's rights.
Defendant produced a number of witnesses, including family members, who testified to frequently smelling smoke and odors in Prospect Park. They also testified to defendant's desire to serve, and enjoyment in being, a firefighter.

II.
N.J.S.A. 2C:30-2(a) under which defendant was indicted for official misconduct provides:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner.
In order to be convicted under this subsection of the statute, (1) the defendant had to be a "public servant" at all relevant times, (2) who committed "an act relating to his office" which constituted "an unauthorized exercise of his official functions," knowing that it was unauthorized or committed in an unauthorized manner, and (3) his purpose must have been "to obtain a benefit for himself or another" or "to injure or deprive another of a benefit." See State v. Mason, 355 N.J.Super. 296, 301, 810 A.2d 88 (App.Div.2002); Model Jury Charge (Criminal), § 2C:30-2 "Official Misconduct" (2006).[3]
Hence, two of the elements require that the defendant be a "public servant" and that the act constitute misconduct relating to his office. See State v. Bullock, 136 N.J. 149, 156-57, 642 A.2d 397 (1994); Mason, supra, 355 N.J.Super. at 301, 810 A.2d 88. The issue as to whether or not an unpaid volunteer firefighter can be a "public servant" is a question of law, see State v. Grimes, 235 N.J.Super. 75, 79, 561 A.2d 647 (App.Div.), certif. denied, 118 N.J. 222, 570 A.2d 976 (1989),[4] and we have *1210 previously held that the actor need not be a government employee so long as he performs a governmental regulatory or enforcement function, Mason, supra, 355 N.J.Super. at 303-04, 810 A.2d 88. Private misconduct by a public official is punishable as misconduct by a non-public official would be, State v. Hinds, 143 N.J. 540, 549, 674 A.2d 161 (1996), but a private citizen performing "a governmental function" can commit official misconduct.
The definition of "public servant," in N.J.S.A. 2C:27-1(g), which applies to all "offenses involving public administration" embodied in chapters 27 through 30, includes "any person participating as juror, advisor, consultant or otherwise, in performing a governmental function...." "Firefighting" is clearly a "governmental function," as part of government's primary role is to protect the health, welfare and safety of the public, even if performed or assisted by volunteers of the community at least in some organized or officially recognized form. See, e.g., N.J.S.A. 2A:53A-13 (tort immunity for volunteer firefighters); Schwartz v. Stockton, 32 N.J. 141, 150, 160 A.2d 1 (1960) (volunteer fire companies perform "governmental function as far as tort liability is concerned"); Capano v. Bound Brook Relief Fire Co. # 4, 356 N.J.Super. 87, 91, 811 A.2d 510 (App. Div.2002), certif. denied, 175 N.J. 550, 816 A.2d 1051 (2003) (firefighter injured "doing public fire duty" entitled to workers' compensation benefits);[5]see also Eggert v. Tuckerton Vol. Fire Co. No. 1, 938 F.Supp. 1230, 1240 (D.N.J.1996) (volunteer fire company was "`state actor' for purposes of plaintiff's § 1983 claims"); Sprint Spectrum, L.P. v. Borough of Upper Saddle River Zoning Bd. of Adjustment, 352 N.J.Super. 575, 598, 801 A.2d 336 (App. Div.), certif. denied, 174 N.J. 543, 810 A.2d 63 (2002) (volunteer fire companies may lease their real property, but as the property is private, they are not required to follow public bidding laws). The charged conduct sufficiently related to defendant's firefighting activities because it called the department into action. See Hinds, supra, 143 N.J. at 546-49, 674 A.2d 161; State v. De Cree, 343 N.J.Super. 410, 418, 778 A.2d 1119 (App.Div.), certif. denied, 170 N.J. 388, 788 A.2d 772 (2001) ("actions in joining the [insurance fraud] scheme [involving the State Health Benefits Program] had nothing to do with [defendant's] status as a security guard," and defendant was not guilty of misconduct merely because of her public employment).
The issue concerning obtaining a "benefit" also turns on the definitional section of N.J.S.A. 2C:27-1. The word "benefit," unless having a different meaning in context:
means gain or advantage, or anything regarded by the beneficiary as gain or advantage, including a pecuniary benefit or a benefit to any other person or entity in whose welfare he is interested.
Clearly, the joy of responding to fires as a volunteer firefighter, if not the desire to give the volunteer department enough work to justify its existence or gain public recognition, is a "benefit" within the meaning of N.J.S.A. 2C:27-1a and, therefore, N.J.S.A. 2C:30-2a. There was testimony defendant always wanted to be a firefighter and enjoyed his participation on the force.
We have no hesitation in concluding, contrary to defendant's argument, that there was sufficient evidence in the record to sustain the jury's conviction based on a finding of a "benefit." See State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967). Just as the trial judge must give the State the *1211 benefit of all reasonable inferences relating to that issue, we must do the same on the review of defendant's conviction. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964).[6]
We find no reversible error flowing from the prosecutor's summation or the judge's charge to the jury. See R. 2:113(e)(2); State v. Feal, 194 N.J. 293, 944 A.2d 599 (2008). Defendant complains the judge instructed the jury to return a verdict of guilty of official misconduct if he committed either an unauthorized act relating to his office, or "committed the act in an unauthorized manner." The element requires either one or the other, and not both.[7]
N.J.S.A. 2C:30-7 which deals with committing a pattern of official misconduct, and for which defendant was convicted in count seven, provides:
a. A person commits the crime of pattern of official misconduct if he commits two or more acts that violate the provisions of N.J.S. 2C:30-2 or section 2 of PL 2003, c. 31, (C. 2C:30-6(c)). It shall not be a defense that the violations were not part of a common plan or scheme, or did not have similar methods of commission.
Here there is no dispute that if defendant was convicted of two or more violations of N.J.S.A. 2C:30-2a, he committed a pattern of official misconduct, and the jury was instructed accordingly. Because there was no pecuniary benefit, the misconduct was second degree, see State v. Phelps, 187 N.J.Super. 364, 373-76, 454 A.2d 908 (App. Div.1983), aff'd, 96 N.J. 500, 476 A.2d 1199 (1984);[8]see also State v. Cetnar, 341 N.J.Super. 257, 264, 775 A.2d 198 (App. Div.), certif. denied, 170 N.J. 89, 784 A.2d 721 (2001). Accordingly, the pattern violation constituted a second degree crime.
The convictions for official misconduct and committing a pattern of misconduct do not merge.[9]N.J.S.A. 2C:30-7b provides:
Pattern of official misconduct is a crime of the second degree if one of the acts committed by the defendant is a first or second degree crime; otherwise, it is a *1212 crime of the third degree, provided, however, that the presumption of nonimprisonment set forth in subsection e. of N.J.S. 2C:44-1 for persons who have not previously been convicted of an offense shall not apply. Notwithstanding the provisions of N.J.S. 2C:1-8 or any other law, a conviction of pattern of official misconduct shall not merge with a conviction of official misconduct, official deprivation of civil rights, or any other criminal offense, nor shall such other conviction merge with a conviction under this section, and the court shall impose separate sentences upon each violation of N.J.S. 2C:30-2 and sections 2 and 3 of P.L. 2003, c. 31 (C. 2C:30-6 and C. 2C:30-7).
In State v. Gonzalez, 123 N.J. 462, 588 A.2d 816 (1991), and State v. Dillihay, 127 N.J. 42, 601 A.2d 1149 (1992), the Supreme Court held that, notwithstanding the anti-merger provisions of N.J.S.A. 2C:35-7, violations of that section merged into convictions for distribution and possession with intent to distribute a controlled dangerous substance (CDS) in violation of N.J.S.A. 2C:35-5, so long as the mandatory minimum required by N.J.S.A. 2C:35-7 was imposed. In the words of Dillihay, "in such cases a mandatory minimum sentence no less severe than that required by the school-zone statute should nevertheless be imposed on defendants convicted of a Section 5 offense." Dillihay, supra, 127 N.J. at 44, 601 A.2d 1149. For purposes of considering the issue before us, we quote at length from Dillihay with respect to the basis for merger and the constitutional principles involved:
We have consistently interpreted New Jersey's constitutional double-jeopardy protection, N.J. Constitution, article I, paragraph 11, as co-extensive with the guarantee of the federal constitution. U.S. Const. amend. V; State v. Churchdale Leasing, 115 N.J. 83, 107-08, 557 A.2d 277 (1989); State v. DeLuca, 108 N.J. 98, 102, 527 A.2d 1355 (1987); State v. Soto, 241 N.J.Super. 476, 479, 575 A.2d 501 (App.Div.1990). We have not determined, nor need we do so here, whether or to what extent New Jersey's constitutional guarantee affords greater protection than does the federal constitution. Churchdale Leasing, supra, 115 N.J. at 108, 557 A.2d 277. To evaluate whether to convict a defendant for violating both Section 5 and the school zone statute by the same conduct is permissible, we first examine the federal law of double jeopardy.
Federal double-jeopardy principles require a two-step analysis to determine whether multiple punishment violates double jeopardy. Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679 74 L.Ed.2d 535, 543-44 (1983); Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981); Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). The first step requires the court to consider whether the legislature intended to impose multiple punishments. Albernaz, supra, 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285. The federal double-jeopardy guarantee "serves principally as a restraint on courts and prosecutors." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (1977). Therefore, "[w]here ... a legislature specifically authorizes cumulative punishment under two statutes, ... a court's task of statutory construction is at an end ... and the trial court or jury may impose cumulative punishment." Missouri v. Hunter, supra, 459 U.S. at 368-69, 103 S.Ct. at 679, 74 L.Ed.2d at 544.
If, however, the legislative intent to allow multiple punishment is not clear, the Court must then apply the test articulated in Blockburger, supra, 284 U.S. at *1213 304, 52 S.Ct. at 182, 76 L.Ed. at 309, to determine whether the defendant is unconstitutionally faced with multiple punishment for the "same" offense. In the absence of legislative intent to authorize cumulative punishment, to punish a defendant twice for the same offense is unconstitutional. Missouri v. Hunter, supra, 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542 (citing 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542 (citing Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715, 723 (1980))). Under Blockburger, two offenses are the same unless "each [offense] requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.
In New Jersey, we have applied the analysis set forth in Missouri v. Hunter and Blockburger v. United States to cases involving double-jeopardy questions. See Churchdale Leasing, supra, 115 N.J. at 103-07, 557 A.2d 277; State v. DeLuca, 108 N.J. 98, 527 A.2d 1355 (1987); State v. Dively, 92 N.J. 573, 578-83, 458 A.2d 502 (1983). To determine whether the non-merger provision of the school-zone statute violates double jeopardy, we first inquire whether the Legislature clearly intended to permit multiple punishment for violations of both Section 5 and the school-zone statute.
[Dillihay, supra, 127 N.J. at 47-48, 601 A.2d 1149.]
As already noted, the Supreme Court, finding no need to invalidate the school zone anti-merger provision, interpreted it to be consistent with constitutional principles by holding that the ineligibility term or mandatory minimum "would survive the merger of a school-zone offense with a Section 5 offense that did not carry a mandatory minimum." Id. at 52, 601 A.2d 1149. Stated differently, the Court held "that the school-zone statute must be construed to allow merger of school-zone offenses into ... Section 5 offenses provided that a defendant convicted of a drug offense in a school zone is sentenced to no less than the mandatory minimum sentence provided in the school-zone statute." Id. at 55, 601 A.2d 1149.
However, we cannot so hold in this case because there is no mandatory minimum established by the Legislature, and in any event,[10] the anti-merger legislation embodied in N.J.S.A. 2C:30-7 added language to that embodied in N.J.S.A. 2C:35-7 after Gonzalez and Dillihay were decided to prevent the very merger that those cases required and which defendant seeks in this case. The Legislature expressly stated that, in addition to the non-merger provision (into or with another conviction), "the court shall impose separate sentences upon each violation of N.J.S.A. 2C:30-2." Nothing could be clearer with respect to the legislative intent. The language is expressed because it has been so consistently held that the double-jeopardy provision of the state constitution is co-extensive with, or provides no greater protection than, the federal double-jeopardy clause, see, e.g., Dillihay, supra, 127 N.J. at 47-48, 601 A.2d 1149, but see Churchdale Leasing Inc., supra, 115 N.J. 83, 557 A.2d 277 (leaving room for a distinction between "multiple prosecutions" and the prohibition against multiple punishment), and because the cases under the federal constitution make clear that merger is a matter of legislative intent when defendant is convicted of multiple offenses in the same prosecution, see, e.g., Albernaz, supra, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275; *1214 Hunter, supra, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Accordingly, given the additional language in N.J.S.A. 2C:30-7 in light of, or because of, Gonzalez and Dillihay, we find no basis for merger of the pattern violation into the misconduct violation.
The State responds to defendant's argument that his "convictions for making false alarms should have been merged with his convictions for official misconduct," by referring to the anti-merger provision of N.J.S.A. 2C:30-7b. However, that section relates only to merger of convictions with or into the pattern offense. See N.J.S.A. 2C:18; Dillihay, supra, 127 N.J. at 46, 601 A.2d 1149; State v. Best, 70 N.J. 56, 356 A.2d 385 (1976); State v. Davis, 68 N.J. 69, 77-82, 342 A.2d 841 (1975).
We order merger of the false alarm convictions and remand for the correction of judgment. The judgment of conviction and sentences for official misconduct and pattern of misconduct are affirmed.
NOTES
[1] The alleged dates were December 29, 2003, January 14, 2004, and February 21, 2004.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Defendant was indicted for violation of N.J.S.A. 2C:30-2(a) in counts one, three and five because he, "with the purpose to obtain a benefit for himself ... committed an act relating to his office, in an unauthorized manner with the knowledge that such conduct was unauthorized."
[4] In State v. Gardner, 113 N.J. 510, 551 A.2d 981 (1989), defendants, who were volunteer firefighters, were indicted for second degree aggravated arson and pled guilty to third degree arson. The issue before the Court was whether they were entitled to the presumption against imprisonment. Defendants were not indicted for misconduct in office, and Gardner does not address that issue.
[5] Chief Vantermolen testified there were death benefits to which volunteer firefighters were entitled after seven years of service and a number of responses to fires.
[6] In light of defendant's contention that he was deprived of the effective assistance of trial counsel, we bypass the question of the impact of defendant's failure to move for a new trial on this ground. See R. 2:10-1; State v. Cook, 179 N.J. 533, 565, 847 A.2d 530 (2004).
[7] Defendant does not complain that the alternative went beyond the wording of the indictment with which he was charged. He complains that, in response to jury questions the judge charged the elements of N.J.S.A. 2C:30-2b ("knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office"). However, in addition to the fact there was no relevant objection, the judge repeated the elements of N.J.S.A. 2C:30-2a. Defendant also asserts that the prosecutor emphasized he called in an alarm and then violated his "primary duty" to stay at the scene of the fire. He did make an objection to this after the charge was completed. However, if defendant knew there was no fire, it is inconceivable anyone would believe he had to stay to fight it, even though the defense asserted he smelled smoke or an odor and another firefighter testified that in such instance he would have a duty to remain on the scene. In any event, the prosecutor's summation was essentially juxtaposing the defendant's claims with what the State contended to be the proofs and reality.
[8] Certification was "limited to the issue of the admissibility of statements made by coconspirators out of the presence of the defendant." Phelps, supra, 96 N.J. at 505, 476 A.2d 1199.
[9] In its brief the State points to the anti-merger provisions of N.J.S.A. 2C:30-7 in response to defendant's arguments about merger of misconduct and setting a false alarm. This led to the merger argument presented orally before us.
[10] It is arguable that the Legislature sought to assure that a sentence of imprisonment survived the merger, but second degree misconduct includes a presumption of imprisonment. See N.J.S.A. 2C:44-1d.