**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2644
_____

GARVIN BOBB,
                                        Petitioner

v.

THE ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A76-493-189)
Immigration Judge:  Honorable Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 22, 2010
Before:  SCIRICA, CHAGARES and WEIS, Circuit Judges

Opinion filed: May 11, 2010
_____

OPINION
_____

WEIS, Circuit Judge.

        Petitioner Garvin Bobb, a native and citizen of Trinidad and Tobago,

entered the United States as a visitor in April 1989.  He shortly thereafter changed his

status to a non-immigrant student. In January 2001, he pled guilty in New Jersey state court to three counts of official misconduct in violation of N.J. Stat. Ann. § 2C:30-2, which, in relevant part, provides:

> "A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
>
> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
>
> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office."

The state prosecution arose out of Bobb's alleged sexual conduct with three minor children when he was employed as a counselor at an institution for abused girls. The Government sought to remove Bobb pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), asserting that he was convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal conduct. The Immigration Judge concluded, inter alia, that the official misconduct charges constituted crimes of moral turpitude and that those crimes did not arise out of a single criminal misconduct scheme.

The Board of Immigration Appeals dismissed Bobb's counseled appeal. Two members of the panel held that the convictions qualified as crimes of moral turpitude because the charging documents revealed acts "involving a betrayal of public trust for [Bobb's] own gratification as well as the sexual exploitation of some of the most vulnerable members of society" and such acts, in turn, were "inherently base, vile,

2

depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general."  The BIA also reasoned that

> "[e]ven assuming . . . some violations of the New Jersey offense of official misconduct would not qualify as crimes involving moral turpitude . . . , a proposition we are not prepared to concede, the United States Court of Appeals for the Third Circuit has held that, '[w]here a statute covers both turpitudinous and non-turpitudinous acts . . . , it is "divisible," and we then look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime of moral turpitude.'  Partyka v. Attorney General of the United States, 417 F.3d 408, 411-12 (3d Cir. 2005).  Cf. also Canada v. Gonzales, 448 F.3d 560, 567-68 (2d Cir. 2006).  As noted above, [Bobb's] conviction record clearly manifests the morally turpitudinous nature of the crime of which he was convicted."

(second alteration in original).

Bobb filed a pro se petition for review with this Court, and we remanded the matter, requesting that the BIA "classify[ ] its analysis of the divisible statute issue under Partyka."

In a single-member decision, the BIA again dismissed Bobb's administrative appeal, stating, "We see nothing in the record or in Third Circuit law that would cause us to reconsider" the earlier judgment.  The BIA noted that the "gravamen"

of the offense was "the knowing abuse of authority by a public official, who betrays the public trust either to benefit himself or to harm another." The BIA held that Bobb "is deportable even if we assume <u>arguendo</u> . . . some violations . . . are non-turpitudinous." The BIA reiterated its findings that the indictment alleged sexual conduct with three minor patients and that such acts involved moral turpitude. Likewise, it reaffirmed its previous finding with respect to the existence of a single scheme of criminal misconduct. In the end, the BIA found Bobb deportable as charged. Bobb filed a petition for review in this Court.

We have jurisdiction over final orders of removal under 8 U.S.C. § 1252. The Government filed a motion to dismiss for lack of jurisdiction, arguing that we do not have jurisdiction to review a final order of removal against an alien found removable for having been convicted of a crime of moral turpitude. <u>See</u> 8 U.S.C. § 1252(a)(2)(C). That jurisdiction-stripping provision applies only when the alien is actually "deportable by reason of having been convicted of one of the enumerated offenses[,]" and we, in turn, have jurisdiction to determine whether such a conviction actually exists. <u>Drakes v. Zimski</u>, 240 F.3d 246, 247 (3d Cir. 2001). In the current proceedings, Bobb argues that the BIA committed errors of law with respect to the issue of moral turpitude. <u>See</u> <u>Alaka v. Att'y Gen.</u>, 456 F.3d 88, 102 (3d Cir. 2006) (this Court retains jurisdiction to review "pure questions of law, and . . . application of law to fact, where the facts are undisputed and not the subject of challenge" (<u>Kamara v. Att'y Gen.</u>, 420 F.3d 202, 211 (3d Cir.

4

2005))). Therefore, we will deny the Government's motion to dismiss.

We review the BIA's conclusions of law de novo, Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004), and "we owe no deference to the [administrative] interpretation of a state criminal statute." Partyka, 417 F.3d at 411 (citing Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004)).

As we recognized in Partyka, the often-complicated issue of moral turpitude mandates a "categorical approach." 417 F.3d at 411. "Whether an alien's crime involves moral turpitude is determined by the criminal statute and the record of conviction, not the alien's conduct." Id. Accordingly,

> "[W]e read the applicable statute to ascertain the least
> culpable conduct necessary to sustain a conviction under the
> statute. As a general rule, a criminal statute defines a crime
> involving 'moral turpitude only if all of the conduct it
> prohibits is turpitudinous.' Where a statute covers both
> turpitudinous and non-turpitudinous acts, however, it is
> 'divisible,' and we then look to the record of conviction to
> determine whether the alien was convicted under that part of
> the statute defining a crime involving moral turpitude.

Id. (citations omitted).

We re-affirmed Partyka's modified categorical approach in Jean-Louis v. Attorney General, 582 F.3d 462 (3d Cir. 2009). In that case, we rejected the Attorney General's interpretation of the crimes of moral turpitude statute which would have

5

departed from the categorical analysis in favor of an individualized inquiry into facts outside of the record of conviction. Id. at 473-74. Instead, we reiterated that "the central inquiry is whether moral depravity inheres in the crime or its elements – not the alien's underlying conduct." Id. at 477.

Divisibility, in this context, refers to a statute which is divided into discrete subsections defining crimes involving moral turpitude and crimes not involving moral turpitude. Padilla v. Gonzales, 397 F.3d 1016, 1019 (7th Cir. 2005); see also Jean-Louis, 582 F.3d at 474 n.16. Here, there are only two subsections of the statute, and Bobb was undoubtedly convicted under section (a); therefore, there is no need to examine the record to determine which was the subsection of conviction. Rather, the relevant question, under Partyka's categorical approach, is whether the least culpable conduct necessary to sustain a conviction under section (a) of the statute would be a crime involving moral turpitude.

The BIA suggested that even the least culpable conduct necessary for a conviction qualifies as a crime involving moral turpitude. The BIA, however, made this suggestion without discussing the specific elements of the crime or citing any New Jersey case law interpreting the criminal statute.[1] Further, Bobb's failure to identify any instance

---

[1] The BIA referred in passing to the "[t]he gravamen of this offense," and it also observed, in rejecting Bobb's speeding ticket hypothetical, that a conviction would require proof "that the police officer refrained from issuing a ticket 'with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit.'" Nevertheless, the BIA still did not conduct a specific examination of the elements to ascertain the least culpable conduct necessary for a conviction.

6

where the New Jersey authorities prosecuted a non-turpitudinous offense is not a requirement under the categorical analysis.  See Jean-Louis, 582 F.3d at 481 (rejecting a requirement that petitioner must show a "'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct").[2]

The Government argues that the knowing and purposeful misuse of a position of public trust renders all violations of the statute turpitudinous.  We are not persuaded that the least culpable conduct under N.J. Stat. Ann. § 2C:30-2(a) meets the definition of a crime of moral turpitude.

In order for an offense to be classified as such, it must involve conduct that is "inherently base, vile, or depraved."  Jean-Louis, 582 F.3d at 465 (quoting Knapik, 384 F.3d at 89).  The statute appears to contain an element of "evil purpose" or "corruption" which we have generally identified as a hallmark of a crime of moral turpitude.  See Jean-Louis, 582 F.3d at 469; see also State v. Gleitsmann, 161 A.2d 747 (N.J. Super. Ct. App. Div. 1960).  In Gleitsmann, the New Jersey Superior Court, interpreting the common law crime of misconduct in office -- a precursor to N.J. Stat. Ann. § 2C:30-2 -- stated that official misconduct contains a wilfulness element, meaning "'an evil purpose or mental

---

[2] Both the BIA and the Government seem to be under the mistaken impression that Bobb was convicted of a sexual misconduct offense and, thus, they focus on the moral depravity of the facts underlying Bobb's crime.  In performing the categorical approach, however, we have repeatedly "cautioned against going beyond the offense as charged and scrutiniz[ing] the underlying facts of a case to determine whether a crime involves moral turpitude."  Knapik v. Ashcroft, 384 F.3d 84, 91 (3d Cir. 2004) (internal quotation marks omitted) (alteration in original).

7

culpability,' a concept which is often labelled 'criminal intent,' 'guilty knowledge,' 'mens rea,' 'bad purpose' or 'corruption.'" 161 A.2d at 749 (citations omitted).

Mental culpability, however, is only one aspect of the moral turpitude analysis, as "the hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." Partyka, 417 F.3d at 414. The statute does not require an underlying criminal act and can involve acts that are legal and innocuous when performed by a non-public official or by a public official in an authorized manner. See State v. Parker, 592 A.2d 228, 235 (N.J. 1991). In Gleitsmann, a police captain was convicted of official misconduct for his personal use of a police car and municipal telephone. 161 A.2d at 748, 750-51. In another instance, the statute was used to convict a volunteer firefighter who made false fire alarms in order to receive the "joy or gratification of participating in the response." State v. Quezeda, 953 A.2d 1206, 1208 (N.J. Super. Ct. App. Div. 2008). In a third case, the executive director of a county community development office was indicted under N.J. Stat. Ann. § 2C:30-2 for disbursing funds without following proper administrative procedures and without the consent of the municipal council. State v. Maioranna, 542 A.2d 510, 511-12 (N.J. Super. Ct. Law Div. 1988).

In essence, almost any official act willfully done without authorization in the course of a public servant's employment may be prosecuted under § 2C:30-2. We cannot say that all, or even most, of these acts involve conduct of inherent baseness or

depravity which characterizes moral turpitude. Therefore, under the least culpable conduct test, the New Jersey crime of official misconduct does not qualify as a crime of moral turpitude.

We conclude that Bobb is not removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two or more crimes involving moral turpitude. Accordingly, we will grant the petition, reverse the order of the BIA, and remand the case for further proceedings consistent with this opinion.